Tab D-2

# UNITED STATES DEPARTMENT OF JUSTICE
## NATIONAL SECURITY DIVISION

| | | |
|---|---|---|
| Joshua W. Nesbitt, | * | |
| | * | |
| Complainant, | * | |
| | * | |
| vs. | * | Agency Case Number: OBD: 2010-00552 |
| | * | |
| | * | |
| United States Department of Justice | * | |
| National Security Division | * | |
| Office of Intelligence | * | |
| 950 Pennsylvania Avenue NW | * | |
| Washington DC 20530, | * | |
| | * | |
| Agency. | * | |

---

## INTERROGATORY FOR NANCY NEWCOMB

---

This Interrogatory concerns the EEO Complaint filed by Joshua W. Nesbitt against the

U.S. Department of Justice, National Security Division (NSD), Office of Intelligence,

Washington DC.  The issue that has been accepted for investigation is whether or not the

Complainant's first line supervisor, Nancy Newcomb, Chief of the Litigation Section, Office of

Intelligence, NSD, and the Responding Management Official (RMO1), and Tashina Gauhar,

Deputy Assistant Attorney General, Office of Intelligence, NSD  (RMO2), engaged in disparate

treatment based on race (African-American), when the Complainant was not selected for the

Deputy Chief position in the Litigation Section (on or about May, 28, 2010).

Page 1 of 12

**Adept Services, Inc.**

Witness Initials ___

DEFENDANT'S
EXHIBIT
___/___

**Question 1.**   Please indicate your full name for the record.

Answer 1.      Nancy Jo Newcomb.

**Question 2.**   Who is your employer?

Answer 2.      U.S. Department of Justice.

**Question 3.**   How long have you been employed by this employer?

Answer 3.     Since 1991.  1991-2004 Criminal Division/Office of Intelligence Policy and Review; 2004-2007 Federal Bureau of Investigation; 2007-present Office of Intelligence Policy and Review/Office of Intelligence.

**Question 4.**   What is your title and pay grade?

Answer 4.      Chief, Litigation Section, Office of Intelligence, National Security Division; GS-15.

**Question 5.**   How long have you held that title?

Answer 5.      Since August 2009.

**Question 6.**   Who was your immediate supervisor at the time of the accepted claim and what is their title?

Answer 6.      Tashina Gauhar, Deputy Assistant Attorney General, Office of Intelligence, National Security Division.

**Question 7.**   Who was your second line supervisor at the time of the accepted claim and what is their title?

Answer 7.      David S. Kris, Assistant Attorney General for National Security.

**Question 8.**   What was your organizational relationship to the Complainant at the time of the accepted claim?

Answer 8.      I was the only supervisor in the Litigation Section before creation of the Deputy Chief position and supervised all attorneys in the Section, including Mr. Nesbitt.  After the selection (and thus, at the time of the accepted claim), I became the second-line supervisor for all attorneys in the Section other than the Deputy Chief.

**Question 9.**   Please identify your race.

Answer 9.      Caucasian.

Adept Services, Inc.

Witness Initials

**Question 10.   What is your knowledge of the Complainant's race and when did you first learn of his race?**

Answer 10.     He appears to be African-American.  I made this observation when I met him shortly after I rejoined the Office of Intelligence's predecessor, the former Office of Intelligence Policy and Review (OIPR) in 2007.

**Question 11.   What role, if any, did you play in the decision to announce the Deputy Chief for Litigation Section position?**

Answer 11.     In the fall of 2009, shortly after I was designated permanently as the Litigation Section Chief, I discussed with Ms. Gauhar the need to create a Deputy Chief position for the Section, which did not then exist.  Ms. Gauhar concurred that the position was warranted.

**Question 12.   Did this position exist prior to this announcement?**

Answer 12.     No.

**Question 13.   What role, if any, did you play in determining the scope of the announcement – e.g. internal only or internal and external candidates could apply and what was your rationale?**

Answer 13.     Since prior internal efforts to recruit attorneys for the Litigation Section generated little interest, I decided to recommend that the announcement be open to any qualified person.

**Question 14.   Who determined the qualifications and responsibilities of the job as enumerated in the vacancy announcement?**

Answer 14.     I used the job announcement for my position as a guide.  I also consulted with Joyce Klitenic, the National Security Division's Chief of Human Resources, for information about general qualifications and requirements.

**Question 15.   What role did you play in determining that the announcement would indicate that past experience in national intelligence or security was not required?  Please explain your rationale in stipulating this.**

Answer 15.     I used the job announcement for my position as a guide.  Although I believed that such experience would be helpful, I did not deem it a dispositive qualification.

**Question 16.   Was the Deputy Chief for Litigation announced under the Agency's Direct Hire authority?  If yes, please briefly explain that authority.**

Page 3 of 12

Adept Services, Inc.

Witness Initials

Answer 16.    I do not know.

**Question 17.   Under Direct Hire Authority, who determined the eligibility and application requirements, such as application deadlines, academic and professional requirements, need for writing samples, current performance rating, etc.**

Answer 17.    I do not know.

**Question 18.   Did the Complainant apply for Deputy Chief Litigation Section, for which the agency was seeking applications?**

Answer 18.    Yes.

**Question 19.   Was the Complainant qualified for the position based on the requirements stated in the announcement?**

Answer 19.    Yes.

**Question 20.   Please explain the process that was followed to screen, rate, and rank or otherwise review the applicants' packages.**

Answer 20.    I am unaware of any process to screen, rate or rank the applicants' packages.  I was informed that NSD's Human Resources Office gave me all of the application packages without any apparent sorting or categorization.

**Question 21.   What was your role, if any, in the above process?**

Answer 21.    None.

**Question 22.   What was your role, if any, in determining that only internal candidates would receive further consideration in the selection process and what was your rationale?**

Answer 22.    After reviewing all of the application packages provided to me by NSD's Human Resources Office, I started the interview process by meeting with the three internal applicants. After I completed the interviews with the internal applicants, I did not believe it was necessary to continue the interview process with external applicants.  I thought that the eventual selectee had all of the qualifications and experience I was seeking and would be an excellent fit for the position.

**Question 23.   Among the applicants that were interviewed for this position, did they all comply with the request to submit a resume of their relevant skills and experience, transcripts, current performance appraisal and a writing sample?  If not, please explain.**

Witness Initials

**Adept Services, Inc.**

Answer 23.    I do not recall precisely which materials each of the internal candidates submitted, nor do I recall precisely which materials I reviewed for each candidate.  The presence or absence of any particular piece of an application package had no bearing on my consideration of whether to interview a candidate or in the selection process.  I assumed that since the application packages had been forwarded to me by NSD's Human Resources Office, the applicants met all of the qualifications.

**Question 24.  Did the Complainant ask you to confirm that he had to provide his transcripts and/or a writing sample in light of his status as an internal applicant?  If yes, when did he make this inquiry, when and how did you respond, and what was your response?**

Answer 24.    No.

**Question 25.  Did any other internal applicants inquire as to the necessity of furnishing transcripts and writing samples?  If yes, who made those inquiries and when and how did you respond and what was your response?**

Answer 25.    The email the eventual selectee sent along with his application mentioned his transcript and writing sample.  I do not recall responding to this email, as I assumed that those materials already were on file with NSD's Human Resources Office.

**Question 26.  Who was the selecting official for this selection?**

Answer 26.    I was.

**Question 27.  Who was the approving or concurring official for this selection?**

Answer 27.    Tashina Gauhar.

**Question 28.  The Complainant alleged that after the Deputy Chief vacancy was announced, but prior to the closing date, he mentioned to you that he was going to apply for the position but he was waiting to receive his transcripts.  Do you recall that conversation?  If yes, did you acknowledge in any way that the transcript was not required?**

Answer 28.    No.  I do not recall Mr. Nesbitt mentioning anything to me about his transcripts.

**Question 29.  Was the Complainant's name among any list of eligible candidates generated from the vacancy announcement for this position and from which a selection was made?**

Witness Initials _____

**Adept Services, Inc.**

Answer 29.   I am not aware of such a list.  His application package was among those forwarded to me by NSD's Human Resources Office.

**Question 30.   Who determined whether any of the applicants would be interviewed?  If you made this determination, how did you determine who would be interviewed?**

Answer 30.   I did.  See my answer to Question 22.

**Question 31.   Did you interview all of the applicants?  If not, please explain your reasoning?**

Answer 31.   No.  See my answer to Question 22.

**Question 32.   If you interviewed any of the candidates, how did you determine the format of the interview and questions posed during the interview?**

Answer 32.   I decided to interview the candidates in a one-on-one setting using a question and answer format.  My questions were based upon information on the applicants' resumes and my personal knowledge of their work.  Two of the three internal candidates were in the Litigation Section and I then was their first line supervisor.  The third internal candidate, who was the eventual selectee, had worked since 2002 in various capacities in the Office of Intelligence and its predecessor, OIPR.

**Question 33.   Did you follow the same format for all interviewees?  If not, why not?**

Answer 33.   Yes.

**Question 34.   Did you make any notes during these interviews?  If yes, please submit them with your signed interrogatory.**

Answer 34.   Yes, but I did not keep the notes after I made the selection for the position.

**Question 35.   What qualifications were you seeking in the selectee?**

Answer 35.   The ideal applicant would have both managerial/supervisory and leadership experience and either national security-related or litigation experience.  I was looking for someone who could step into my role at any time.  I needed a Deputy who could assist me in managing the increasing work load in the Litigation Section and fulfill the Chief's duties in my absence.

**Question 36.   How would these qualifications indicate success in performing the job duties?**

Page 6 of 12

Adept Services, Inc.

Witness Initials

Answer 36.     The Deputy Chief serves as the first level supervisor for Litigation Section attorneys and represents the Section, the Office of Intelligence, the National Security Division, and the Department of Justice at numerous high-level meetings relating to national security matters with outside agencies including the FBI and members of the Intelligence Community. It is important to note that the Deputy Chief position is substantively different from a line attorney position within the Litigation Section and that successful performance as a line attorney in the Section is not enough, taken by itself, to suggest that a candidate would have the qualifications to perform the duties of the Deputy Chief.

**Question 37.   What qualifications did the selectee have or lack?**

**Answer 37.**     The selectee possessed all of these qualifications. He had experience as both a federal and state prosecutor. He also had significant experience in national security matters, having joined OIPR in 2002. He had previous supervisory experience as a Deputy Chief in the Department's Capital Case Unit, where he represented the Unit as a Deputy Chief in meetings with high-level officials. He has represented the Office of Intelligence and OIPR in high-level meetings with the FBI and other agencies of the Intelligence Community. He has earned awards and commendations from the Department, the Director of National Intelligence, and the National Security Agency.

**Question 38.   What qualifications did the Complainant have or lack?**

Answer 38.     Mr. Nesbitt had significant litigation experience and relevant national security experience. Mr. Nesbitt did not have managerial/supervisory experience. He had limited leadership experience. Mr. Nesbitt had attended meetings where other agency officials were present, but did not have significant experience in serving as the representative of the Department of Justice at high level meetings relating to national security matters with the FBI and other agencies of the Intelligence Community.

**Question 39.   Why did you choose the selectee?  Please explain in detail.**

Answer 39.     See my answer to Question 37. The selectee possessed the ideal combination of qualifications and experience for the Deputy Chief position.

**Question 40.   Why did you not choose the Complainant?  Please explain in detail.**

Answer 40.     See my answer to Question 38.

**Question 41.   Did you have personal knowledge of the Complainant and/or the selectee prior to the announcement?  If yes, to what extent did this knowledge affect your decision?**

Answer 41.     Yes; see my answer to Question 32. My experience working with them confirmed for me that the selectee was the most qualified applicant for the position.

Witness Initials

**Adept Services, Inc.**

**Question 42.   To what extent, if any, did the applicants' comparative performance during their interviews impact on your selection?**

Answer 42.    None.

**Question 43.   To what extent, if any, did the applicants' comparative academic background impact on your decision?**

Answer 43.    None.

**Question 44.   To what extent did any personal knowledge you had of the applicants' work record impact on your decision?**

Answer 44.    None.

**Mr. Nesbitt alleges that when management did not select him, it was discriminatory based on his race.  He holds Ms. Newcomb and Ms. Gauhar accountable for this discrimination. He cited several reasons for his belief which are enumerated below.  Please respond to each.**

**Question 45.   Mr. Nesbitt believes that when he was not selected for the position of Deputy Chief, Litigation Section, he was discriminated against on the basis of his race because he submitted a complete application, including his transcripts and writing sample, documents he was affirmatively told by Ms. Klitenic were required but the selectee's application was incomplete.  Please respond to his allegation and address the extent to which the selectee's application was incomplete and Mr. Nesbitt's claim that he was required to submit a writing sample and transcripts.**

Answer 45.    I have no first-hand knowledge of communications between Mr. Nesbitt and Ms. Klitenic.  I reviewed all of the application packages provided to me by Human Resources, which, together with the interviews I conducted, provided me all of the information I needed to make a fully-informed decision.

**Question 46.   Mr. Nesbitt believes that when he was not selected for the position of Deputy Chief, Litigation Section, he was discriminated against on the basis of his race because he believes that he had more experience, more time in the Office of Intelligence, and more time in the OI litigation.  Mr. Nesbitt stated that he has been a federal prosecutor since**

1992. He stated that the selectee was not a litigating prosecutor and lacked experience with the grand jury, trial work and familiarity with the federal criminal procedures. Please respond.

Answer 46.    The selectee has been in the Office of Intelligence and its predecessor OIPR since 2002; Mr. Nesbitt had been in the Office of Intelligence since 2006. Both have relevant litigation and prosecutorial experience. The selectee has managerial/supervisory and leadership experience and qualifications that Mr. Nesbitt lacks.

Question 47.   Mr. Nesbitt believes that when he was not selected for the position of Deputy Chief, Litigation Section, he was discriminated against on the basis of his race because he alleges he did possess the experience and leadership skills that management stated the selectee had. He cited, as an example of leadership, a situation in which he and Ms. Newcomb became aware of information about a sensitive collection technique that was on the internet. Mr. Nesbitt stated that Ms. Newcomb left for the day but he remained on duty to try to mask the problem. As another example, he cited an issue that he had collaborated with a colleague to draft language to address a concern about documents that contained classified information. He said this proposal was presented to Ms. Newcomb and Ms. Gauhar. He also cited the fact that during the job interview with Ms. Newcomb he made a suggestion about CIPA training. He said that after the selection, his suggestion for this training was adopted. He stated he also made a suggestion that facilitated the 997 process that was adopted. Please respond.

Answer 47.    I recall the situation regarding the sensitive collection technique on the Internet and that Mr. Nesbitt looked into how this occurred and explored a possible way to mask the collection. I do not recall anything coming of this. I recall that Mr. Nesbitt and his colleague sent an email to Ms. Gauhar and me suggesting that the Assistant Attorney General for National Security require the Litigation Section to review all search warrants and indictments relating to national security throughout the country before prosecutors can proceed with their cases. This proposal was never implemented. I recall a discussion during the interview process that it would be useful for Litigation Section staff to have more training, including CIPA training. As a result, I attempted to set up CIPA training for the Litigation Section, but due to scheduling, was unable to do so. I do not recall any suggestion by Mr. Nesbitt regarding the 997 process.

Question 48.   Mr. Nesbitt believes that when he was not selected for the position of Deputy Chief, Litigation Section, he was discriminated against on the basis of his race because Ms.

Page 9 of 12

Witness Initials

Newcomb and Ms. Gauhar have made negative assumptions and have lower expectations of him based on his race. He cited management's response to the EEO Counselor when they indicated that the selectee had experience in representing the office in high level meetings. Mr. Nesbitt stated they presumed he did not have this experience but he had briefed the AG in 2002 and debriefed FBI Director Mullet [sic] as well as other meetings with the AAG and Mr. Gonzalez. Please respond.

Answer 48.    I never presumed that Mr. Nesbitt had no experience in this area. Rather, the selectee had significant and extensive experience in representing the Office of Intelligence, its predecessor OIPR, and the Capital Crimes Unit in high level meetings within the Department and with outside agencies including the FBI and other members of the Intelligence Community. In addition, the meetings in which he has participated since joining OIPR in 2002 concerned national security matters directly related to the work of NSD.

Question 49.  Mr. Nesbitt believes that when he was not selected for the position of Deputy Chief, Litigation Section, he was discriminated against on the basis of his race because Ms. Newcomb and Ms. Gauhar have made negative assumptions and have lower expectations of him based on his race. He cited management's response to the EEO Counselor when they cited the selectee's knowledge of FAA (FISA Amendment Act) as a factor in the selection. Mr. Nesbitt stated he was never asked about his knowledge of FAA. Please respond.

Answer 49.    I have no knowledge of this alleged management response. This is not included in the only management document that I am aware of, dated September 2, 2010, which answered questions posed by the EEO counselor.

Question 50.  Mr. Nesbitt believes that when he was not selected for the position of Deputy Chief, Litigation Section, he was discriminated against on the basis of his race because he alleges that he was employed in the NSD from 2006 to 2010 but only after he expressed an interest in supervisory positions in 2009, did he began to experience problems with management. He cited as background, a situation in August 2009 when a Unit Chief in Counterintelligence sent an email communication to colleagues that inferred that he had not provided coverage for a case and also did not leave good contact information. Please

Page 10 of 12

Adept Services, Inc.

Witness Initials

respond to his allegation of racial discrimination and indicate whether you had knowledge of this event and if so, if you considered it in your decision to not select Mr. Nesbitt.

Answer 50.     I learned of this situation after the fact from Mr. Nesbitt when he told me it was a factor in his desire to seek a transfer to the Litigation Section.  Communications among Office staff about case coverage and contact information are routine.  I did not consider it in making my selection decision for the Deputy Chief position.

Question 51.  Mr. Nesbitt believes that when he was not selected for the position of Deputy Chief, Litigation Section, he was discriminated against on the basis of his race because he alleges that he was employed in the NSD from 2006 to 2010 but only after he expressed an interest in supervisory positions in 2009, did he began to experience problems with management.  He cited as background, a situation in September 2009 when he had a "Read" due on the day of a colleague's funeral.  He stated that he needed to insert material that was forthcoming from the FBI in order to file the "Read".  He stated he made arrangement with the reviewer, that he would insert this material when he returned from the funeral.  He alleged that when he did return, he learned from a co-worker that there was a rumor that he was out for the day, but had left the "Read" with another co-worker who had been fired on the day before.  He believes that the rumor emanated from management.  Please respond to his allegation of racial discrimination and indicate whether you had knowledge of this event and if so, if you considered it in your decision to not select Mr. Nesbitt.

Answer 51.     I have no knowledge of this event.

Question 52.  Mr. Nesbitt believes that when he was not selected for the position of Deputy Chief, Litigation Section, he was discriminated against on the basis of his race because he alleges that he was employed in the NSD from 2006 to 2010 but only after he expressed an interest in supervisory positions in 2009, did he began to experience problems with management.  He cited as background, a situation in December 2009-January 2010.  He explained that he had asked for a transfer from Counterintelligence (CI) to the Litigation Section because of the above incidents and was granted that transfer on December 7, 2009.  Mr. Nesbitt said that a case he had handled in CI needed to be reassigned.  He explained

Page 11 of 12

Witness Initials

that he had a technical question on the case and sent an email to an FBI case agent and to an NSD colleague. He stated that his CI supervisor was very upset over the communication and made a comment to the effect that she didn't know what Nancy would think about this but she felt the communication was inappropriate. Please respond to his allegation of racial discrimination and indicate whether you had knowledge of this event and if so, if you considered it in your decision to not select Mr. Nesbitt.

Answer 52. I have no knowledge of this event.

**Question 53. Did you consider Mr. Nesbitt's race when you made the selection or concurred with the selection of Mr. Nesbitt?**

Answer 53. No.

**Question 54. Do you have any other relevant information to provide?**

Answer 54. No.

**Question 55. Do you wish to submit any evidence in support of the information you provided?**

Answer 55. No.

**Question 56. Do you have any other relevant information to provide?**

Answer 56. No.

Pursuant to Title 28 U.S.C. §1746, I declare under the penalty of perjury that the foregoing statement, consisting of _12_ pages, is true and correct to the best of my knowledge and belief. I understand the information I have given is not considered confidential and that it may be shown to interested parties.

| | |
|---|---|
| _Nancy J. Newcomb_ | _Feb 11, 2011_ |
| Signature of Affiant | Date Signed |
| _Kathleen Brehm_ | _2/15/11_ |
| Signature of Investigator | Date Signed |

Page 12 of 12

Witness Initials _CNS_

**Adept Services, Inc.**

UNITED STATES DEPARTMENT OF JUSTICE
NATIONAL SECURITY DIVISION

Joshua W. Nesbitt,                          *
                                            *
              Complainant,                  *
                                            *
vs.                                         *         Agency Case Number: OBD:  2010-00552
                                            *
                                            *
United States Department of Justice         *
National Security Division                  *
Office of Intelligence                      *
950 Pennsylvania Avenue NW                  *
Washington, DC 20530,                       *
                                            *
Agency.                                     *

---

## SUPPLEMENTAL INTERROGATORY FOR NANCY NEWCOMB

---

This Interrogatory concerns the EEO Complaint filed by Joshua W. Nesbitt against the

U.S. Department of Justice, National Security Division (NSD), Office of Intelligence,

Washington, DC.  The issue that has been accepted for investigation is whether or not the

Complainant's first line supervisor, Nancy Newcomb, Chief of the Litigation Section, Office of

Intelligence, NSD, and the Responding Management Official (RMO1), and Tashina Gauhar,

Deputy Assistant Attorney General, Office of Intelligence, NSD (RMO2), engaged in disparate

treatment based on race (African-American), when the Complainant was not selected for the

Deputy Chief position in the Litigation Section (on or about May, 28, 2010).

Page 1 of 2                                                   Affiant's Initials _____

**Adept Services, Inc.**

**Question 1.**   Please indicate your full name for the record?

Answer 1.   Nancy Jo Newcomb.

**Question #49 on the original affidavit was not worded properly.  Please respond to the question below.**

**Question 2.**   Mr. Nesbitt believes that when he was not selected for the position of Deputy Chief, Litigation Section, he was discriminated against on the basis of his race because Ms. Newcomb and Ms. Gauhar made negative assumptions and have lower expectations of him based on his race.  He cited his discussion with Ms. Newcomb when the selection was announced, in which Ms. Newcomb allegedly told Mr. Nesbitt that the selectee had a lot of experience in FAA, but at no time during his interviews for the position did Ms. Newcomb inquire as to his knowledge of FAA.  Please respond to Mr. Nesbitt's assertions that these actions resulted in racial discrimination.

Answer 2.   Knowledge of FAA was not a factor in the selection.  While I do not recall discussing this with Mr. Nesbitt, to the extent I may have mentioned the selectee's experience in FAA matters to him, I presume it was simply to provide an example of the selectee's vast experience in national security matters.

**Question 3.**   Do you have any other relevant information to provide?

Answer 3.   No.

Pursuant to Title 28 U.S.C. §1746, I declare under the penalty of perjury that the foregoing statement, consisting of __2__ pages, is true and correct to the best of my knowledge and belief.   I understand the information I have given is not considered confidential and that it may be shown to interested parties.

_Nancy J. Newcomb_      _Feb 16, 2011_
Signature of Affiant           Date Signed

_Kathleen Brelum_      _2/16/11_
Signature of Investigator      Date Signed

Page 2 of 2

Affiant's Initials _____

## PRIVACY ACT NOTICE TO INTERVIEW WITNESSES
## (OTHER THAN COMPLAINANT)
## FOR EMPLOYMENT DISCRIMINATION COMPLAINT INVESTIGATIONS

### GENERAL

This information is provided pursuant to Public law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

### AUTHORITY

The authority to collect the information requested by this interview is derived from one or more of the following: 5 C.F.R. §§ 5.2 and 5.3; 29 C.F.R. §§ 1613 and 1614; 5 U.S.C. §1303 and 1304; 42 U.S.C. § 2000e-16; and Executive Order 11478, as amended.

### PURPOSES AND USES

The information you supply will be use, along with data developed, to resolve or otherwise determine the merits of the complaint of discrimination in the delivery of federally assisted or federally conducted programs or services. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the complaint of discrimination. The information may also be disclosed any agency of the Federal Government having a working relationship with regard to EEO Commission activities, to the intelligence agencies of the Federal Government or to others for uses as published in the Federal Register.

### EFFECTS OF NONDISCLOSURE

Disclosure of the information sought is voluntary; however, failure on the part of Federal employees to furnish the information will result in a direction by the head of the agency or designated representative to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you, up to and including termination. Applicants in such cases may be refused employment. Disclosure of information by present or perspective contractors is also voluntary, although failure to furnish the above requested information where the contract so provides may result in administrative sanctions, including disqualification to enter into a contract, or termination of an existing contract.

_Kathleen Brehm 2/15/11_
Signature of Investigator

_Nancy J. Newroul_
Signature of Affiant

_Feb 11, 2011_
Date

*Tab D-3*

UNITED STATES DEPARTMENT OF JUSTICE
NATIONAL SECURITY DIVISION

Joshua W. Nesbitt,                              *
                                                *
            Complainant,                        *
                                                *
vs.                                             *        Agency Case Number: OBD:  2010-00552
                                                *
                                                *
United States Department of Justice             *
National Security Division                      *
Office of Intelligence                          *
950 Pennsylvania Avenue NW                      *
Washington DC 20530,                            *
                                                *
Agency.                                         *

---

## INTERROGATORY FOR TASHINA GAUHAR

---

This Interrogatory concerns the EEO Complaint filed by Joshua W. Nesbitt against the

U.S. Department of Justice, National Security Division (NSD), Office of Intelligence,

Washington DC.  The issue that has been accepted for investigation is whether or not the

Complainant's first line supervisor, Nancy Newcomb, Chief of the Litigation Section, Office of

Intelligence, NSD, and the Responding Management Official (RMO1), and Tashina Gauhar,

Deputy Assistant Attorney General, Office of Intelligence, NSD (RMO2), engaged in disparate

treatment based on race (African-American), when the Complainant was not selected for the

Deputy Chief position in the Litigation Section (on or about May, 28, 2010).

Page 1 of 12

**Adept Services, Inc.**

Witness Initials

DEFENDANT'S
EXHIBIT
2
tabbies

**Question 1.    Please indicate your full name for the record?**

Answer 1.    Tashina Gauhar.

**Question 2.    Who is your employer?**

Answer 2.    U.S. Department of Justice.

**Question 3.    How long have you been employed by this employer?**

Answer 3.    Since August 2001.

**Question 4.    What is your title and pay grade?**

Answer 4.    Deputy Assistant Attorney General, Office of Intelligence, National Security Division; SES.

**Question 5.    How long have you held that title?**

Answer 5.    Since September 2009.

**Question 6.    Who was your immediate supervisor at the time of the accepted claim and what is their title?**

Answer 6.    David S. Kris, Assistant Attorney General for National Security.

**Question 7.    Who was your second line supervisor at the time of the accepted claim and what is their title?**

Answer 7.    N/A.

**Question 8.    What was your organizational relationship to the Complainant at the time of the accepted claim?**

Answer 8.    I manage the Office of Intelligence.  Before the selection of a Deputy Chief for the Litigation Section, I was the second line supervisor (reviewing official) for Litigation Section staff, including Mr. Nesbitt.  After the selection, my role changed and like the other Sections within the Office of Intelligence, I no longer directly supervised the line attorneys in the Litigation Section.

**Question 9.    Please identify your race.**

Answer 9.    Asian-American (of Pakistani origin).

Page **2** of **12**

Witness Initials

**Adept Services, Inc.**

**Question 10.   What is your knowledge of the Complainant's race and when did you first learn of his race?**

Answer 10.   He appears to be African-American.  I made this observation when I met him shortly after he joined the National Security Division.

**Question 11.   What role, if any, did you play in the decision to announce the Deputy Chief for Litigation Section position?**

Answer 11.   In the fall of 2009, after Ms. Newcomb was permanently designated as the Litigation Section Chief, she and I discussed the need to create a Deputy Chief position, which did not then exist.  Ms. Newcomb needed a Deputy who could assist her in managing the increasing work load in the Litigation Section and fulfill the Chief's duties in her absence.  Hiring a Deputy also would relieve me of the second-line supervisory role I then played with respect to Litigation Section staff.

**Question 12.   Did this position exist prior to this announcement?**

Answer 12.   No.

**Question 13.   What role, if any, did you play in determining the scope of the announcement – e.g. internal only or internal and external candidates could apply and what was your rationale?**

Answer 13.   Since prior internal efforts to recruit attorneys for the Litigation Section had generated little interest, Ms. Newcomb, after consulting with Joyce Klitenic, the National Security Division's Chief of Human Resources, recommended that the announcement be open to any qualified person.  I concurred in that recommendation.

**Question 14.   Who determined the qualifications and responsibilities of the job as enumerated in the vacancy announcement?**

Answer 14.   My understanding is that Ms. Klitenic provided the general qualifications and requirements and Ms. Newcomb developed the job-specific qualifications and responsibilities for the position.  I reviewed and approved the announcement.

**Question 15.   What role did you play in determining that the announcement would indicate that past experience in national intelligence or security was not required?  Please explain your rationale in stipulating this.**

Answer 15.   See my answer to Question 14.  While Ms. Newcomb and I agreed that the ideal candidate would have both national security and prosecutorial experience, Ms. Newcomb

advised me that she could train a candidate who already had a very strong background in one of those qualifications in the other, if that applicant otherwise was the best qualified for the position.

**Question 16.  Was the Deputy Chief for Litigation announced under the Agency's Direct Hire authority?  If yes, please briefly explain that authority.**

Answer 16.     I do not know.

**Question 17.   Under Direct Hire Authority, who determined the eligibility and application requirements, such as application deadlines, academic and professional requirements, need for writing samples, current performance rating, etc.**

Answer 17.     I do not know.

**Question 18.   Did the Complainant apply for Deputy Chief Litigation Section, for which the agency was seeking applications?**

Answer 18.     Yes.

**Question 19.   Was the Complainant qualified for the position based on the requirements stated in the announcement?**

Answer 19.     I did not review any of the application packages submitted by candidates for this position and did not interview any of the candidates.

**Question 20.   Please explain the process that was followed to screen, rate, and rank or otherwise review the applicants' packages.**

Answer 20.     I am unaware of any process to screen, rate or rank the applicants' packages.  I understand from Ms. Newcomb that NSD's Human Resources Office gave her all of the application packages without any apparent sorting or categorization.

**Question 21.   What was your role, if any, in the above process?**

Answer 21.     None.

**Question 22.   What was your role, if any, in determining that only internal candidates would receive further consideration in the selection process and what was your rationale?**

Answer 22.     None.  After Ms. Newcomb interviewed the three internal candidates, she recommended to me that an offer be made to the eventual selectee.  Ms. Newcomb thought that he had all of the qualifications and experience she was seeking and would be an excellent fit for

Page 4 of 12                                                           Witness Initials

**Adept Services, Inc.**

the position. I was familiar with the eventual selectee's work because he had worked in various capacities in the Office of Intelligence and its predecessor, the former Office of Intelligence Policy and Review (OIPR), since 2002. Based on Ms. Newcomb's recommendation and my knowledge of his work, I concurred in the selection.

**Question 23.** Among the applicants that were interviewed for this position, did they all comply with the request to submit a resume of their relevant skills and experience, transcripts, current performance appraisal and a writing sample? If not, please explain.

Answer 23.   I do not know.

**Question 24.** Did the Complainant ask you to confirm that he had to provide his transscripts and/or a writing sample in light of his status as an internal applicant? If yes, when did he make this inquiry, when and how did you respond, and what was your response?

Answer 24.   No.

**Question 25.** Did any other internal applicants inquire as to the necessity of furnishing transcripts and writing samples? If yes, who made those inquiries and when and how did you respond and what was your response?

Answer 25.   I do not know. I do not recall anyone contacting me.

**Question 26.** Who was the selecting official for this selection?

Answer 26.   Ms. Newcomb.

**Question 27.** Who was the approving or concurring official for this selection?

Answer 27.   I was.

**Question 28.** Was the Complainant's name among any list of eligible candidates generated from the vacancy announcement for this position and from which a selection was made?

Answer 28.   I am not aware of any such a list. I understand from Ms. Newcomb that his application package was among those forwarded to her by NSD's Human Resources Office.

**Question 29.** Who determined whether any of the applicants would be interviewed? If you made this determination, how did you determine who would be interviewed?

Answer 29.   Ms. Newcomb.

Page 5 of 12

Witness Initials

**Adept Services, Inc.**

**Question 30.   Did you interview all of the applicants?  If not, please explain your reasoning?**

Answer 30.     I did not interview any of the applicants.

**Question 31.   If you interviewed any of the candidates, how did you determine the format of the interview and questions posed during the interview?**

Answer 31.     Please see my answer to Question 30.

**Question 32.   Did you follow the same format for all interviewees?  If not, why not?**

Answer 32.     Please see my answer to Question 30.

**Question 33.   Did you make any notes during these interviews?  If yes, please submit them with your signed interrogatory.**

Answer 33.     Please see my answer to Question 30.

**Question 34.   What qualifications were you seeking in the successful candidate?**

Answer 34.     Based on my discussions with Ms. Newcomb and my experience in managing the Office of Intelligence, the ideal candidate would have experience in all of the following areas: managerial/supervisory, leadership, national security, and litigation.  This ideal qualification set would allow the candidate to fulfill the Chief's duties in Ms. Newcomb's absence.  But as I said in my Answer to Question 15, Ms. Newcomb believed that she could train an otherwise superbly qualified candidate who lacked either national security or prosecutorial experience.

**Question 35.   How would these qualifications indicate success in performing the job duties?**

Answer 35.     The Deputy Chief represents the Section, Office of Intelligence, National Security Division, and Department of Justice at numerous high-level meetings relating to national security matters with the FBI and other agencies of the Intelligence Community.  The Deputy Chief also serves as the first level supervisor for Litigation Section attorneys and fulfills the Chief's management and other duties in the Chief's absence.

**Question 36.   What qualifications did the successful candidate have or lack?**

Answer 36.     I did not review any of the application packages submitted by candidates for this position and did not interview any of the candidates.  I relied on Ms. Newcomb's recommendation.  According to Ms. Newcomb, the selectee had experience as both a federal and state prosecutor and significant experience in national security.  He had supervisory and leadership experience that the other internal candidates did not have.  Ms. Newcomb believed he

Page **6** of **12**

Witness Initials

**Adept Services, Inc.**

had all of the qualifications and experience the position required and that he would be an excellent fit for the job. My experience working with the selectee since 2002 corroborated what Ms. Newcomb told me about her assessment of the selectee.

**Question 37.   What qualifications did the Complainant have or lack?**

Answer 37.     I did not review any of the application packages submitted by candidates for this position and did not interview any of the candidates. I relied on Ms. Newcomb's recommendation. We discussed the background and experience of the selectee and why she believed him to be the most qualified candidate for the position.

**Question 38.   Why did you choose the successful candidate?  Please explain in detail.**

Answer 38.    Ms. Newcomb made the selection in which I concurred. She believed that the selectee's prior extensive national security experience within the Office and OIPR, litigation experience, and supervisory and leadership experience, including his experience representing the Criminal Division as a Deputy Chief in meetings with the Attorney General, and the Office of Intelligence and OIPR in high level meetings within the Department and the FBI and other agencies of the Intelligence Community, clearly made him the most qualified candidate for the Deputy Chief position. Based on Ms. Newcomb's recommendation and my personal knowledge of the work of the selectee, I agreed with her selection.

**Question 39.   Why did you not choose the Complainant?  Please explain in detail.**

Answer 39.    Ms. Newcomb made the selection in which I concurred. I approved the recommendation because I believed that the selectee clearly was the best qualified candidate for the position. Please see my answers to Questions 36-38.

**Question 40.   Did you have personal knowledge of the Complainant and/or the selectee prior to the announcement?  If yes, to what extent did this knowledge affect your decision?**

Answer 40.    Yes. In the past, I was in the supervisory chain for both the selectee and Mr. Nesbitt. I was familiar with the work of the selectee because since 2002, he had worked in various capacities in the Office of Intelligence and OIPR. Prior to the selection of the Deputy Chief for the Litigation Section, I was Mr. Nesbitt's second line supervisor. My personal knowledge of the work of the selectee and Mr. Nesbitt corroborated Ms. Newcomb's reasons for her selection, in which I concurred.

**Question 41.   To what extent, if any, did the applicants' comparative performance during their interviews impact on your selection?**

Answer 41.    None. I did not interview any of the applicants.

Witness Initials

**Adept Services, Inc.**

**Question 42.  To what extent, if any, did the applicants' comparative academic background impact on your decision?**

Answer 42.     None.  I did not review the application packages.

**Question 43.   To what extent did any personal knowledge you had of the applicants' work record impact on your decision?**

Answer 43.     Please see my answers to Questions 36, 38 and 40.

**Mr. Nesbitt alleges that when management did not select him, it was discriminatory based on his race.  He holds Ms. Newcomb and Ms. Gauhar accountable for this discrimination. He cited several reasons for his belief which are enumerated below.  Please respond to each.**

**Question 44.  Mr. Nesbitt believes that when he was not selected for the position of Deputy Chief, Litigation Section, he was discriminated against on the basis of his race because he submitted a complete application, including his transcripts and writing sample, documents he was affirmatively told by Ms. Klitenic were required but the selectee's application was incomplete.  Please respond to his allegation and address the extent to which the selectee's application was incomplete and Mr. Nesbitt's claim that he was required to submit a writing sample and transcripts.**

Answer 44.     I have no first-hand knowledge of communications between Mr. Nesbitt and Ms. Klitenic.  I found out about this only after Mr. Nesbitt told certain members of NSD management (not me) during the course of these proceedings.  I did not review or have knowledge of the status of any of the application packages submitted by candidates for this position.

**Question 45.  Mr. Nesbitt believes that when he was not selected for the position of Deputy Chief, Litigation Section, he was discriminated against on the basis of his race because he believes that he had more experience, more time in the Office of Intelligence, and more time in the OI litigation.  Mr. Nesbitt stated that he has been a federal prosecutor since 1992.  He stated that the selectee was not a litigating prosecutor and lacked experience with the grand jury, trial work and familiarity with the federal criminal procedures.  Please respond.**

Page 8 of 12

**Adept Services, Inc.**

Witness Initials _____

Answer 45.    The selectee has been in the Office of Intelligence and its predecessor OIPR since 2002; Mr. Nesbitt had been in the Office of Intelligence since 2006.  Both have relevant litigation and prosecutorial experience.  Ms. Newcomb determined that the selectee had managerial/supervisory and leadership experience and that these qualifications made him the leading candidate, and I concurred with her decision.  As noted in the posting for the position, prosecutorial experience was not the only qualification listed for this position.  The Deputy Chief has responsibilities that require more than prosecutorial experience.

**Question 46.  Mr. Nesbitt believes that when he was not selected for the position of Deputy Chief, Litigation Section, he was discriminated against on the basis of his race because he alleges he did possess the experience and leadership skills that management stated the selectee had.  He cited, as an example of leadership, a situation in which he and Ms. Newcomb became aware of information about a sensitive collection technique that was on the internet.  Mr. Nesbitt stated that Ms. Newcomb left for the day but he remained on duty to try to mask the problem.  As another example, he cited an issue that he had collaborated with a colleague to draft language to address a concern about documents that contained classified information.  He said this proposal was presented to Ms. Newcomb and Ms. Gauhar.  He also cited the fact that during the job interview with Ms. Newcomb, he made a suggestion about CIPA training.  He said that after the selection, his suggestion for this training was adopted.  He stated he also made a suggestion that facilitated the 997 process that was adopted.  Please respond.**

Answer 46.    As the manager of the Office of Intelligence, I am copied on numerous emails about various matters, but I do not recall any of these situations from the descriptions provided by Mr. Nesbitt.  In addition, I do not recall the circumstances described as being beyond the scope of work expected of a line attorney in the Section or necessarily being reflective of the exercise of management authority.

**Question 47.  Mr. Nesbitt believes that when he was not selected for the position of Deputy Chief, Litigation Section, he was discriminated against on the basis of his race because Ms. Newcomb and Ms. Gauhar have made negative assumptions and have lower expectations of him based on his race.  He cited management's response to the EEO Counselor when they indicated that the selectee had experience in representing the office in high level meetings.  Mr. Nesbitt stated they presumed he did not have this experience but he had**

Witness Initials

briefed the AG in 2002 and debriefed FBI Director Mullet [sic] as well as other meetings with the AAG and Mr. Gonzalez.  Please respond.

Answer 47.    I did not presume that Mr. Nesbitt had no experience in this area.  Rather, the selectee had significant and extensive experience in representing the Office of Intelligence and OIPR in high level meetings within the Department and with the FBI and other agencies of the Intelligence Community concerning national security issues directly related to the work of the Office of Intelligence.

**Question 48.  Mr. Nesbitt believes that when he was not selected for the position of Deputy Chief, Litigation Section, he was discriminated against on the basis of his race because Ms. Newcomb and Ms. Gauhar have made negative assumptions and have lower expectations of him based on his race.  He cited management's response to the EEO Counselor when they cited the selectee's knowledge of FAA (FISA Amendment Act) as a factor in the selection.  Mr. Nesbitt stated he was never asked about his knowledge of FAA.  Please respond.**

Answer 48.    I have no knowledge of this alleged management response.  This is not included in the only management document that I am aware of, dated September 2, 2010, which answered questions posed by the EEO counselor.

**Question 49.  Mr. Nesbitt believes that when he was not selected for the position of Deputy Chief, Litigation Section, he was discriminated against on the basis of his race because he alleges that he was employed in the NSD from 2006 to 2010 but only after he expressed an interest in supervisory positions in 2009, did he began to experience problems with management.  He cited as background, a situation in August 2009 when a unit chief in counterintelligence sent an email communication to colleagues that inferred that he had not provided coverage for a case and also did not leave good contact information.  Please respond to his allegation of racial discrimination and indicate whether you had knowledge of this event and if so, if you considered it in your decision to not select Mr. Nesbitt.**

Answer 49.    As the manager of the Office of Intelligence, I am copied on numerous emails about various matters, but I do not recall this communication or the inference that Mr. Nesbitt alleges.  Communications among Office staff about case coverage and contact information are routine.  Ms. Newcomb and I had no discussions about this incident when we discussed her reasons for making the selection for this position and I did not consider it in my concurrence with the selection.

Page **10** of **12**

Witness Initials _____

**Adept Services, Inc.**

Question 50.  Mr. Nesbitt believes that when he was not selected for the position of Deputy Chief, Litigation Section, he was discriminated against on the basis of his race because he alleges that he was employed in the NSD from 2006 to 2010 but only after he expressed an interest in supervisory positions in 2009, did he began to experience problems with management.  He cited as background, a situation in September 2009 when he had a "Read" due on the day of a colleague's funeral.  He stated that he needed to insert material that was forthcoming from the FBI in order to file the "Read".  He stated he made arrangement with the reviewer that he would insert this material when he returned from the funeral.  He alleged that when he did return, he learned from a co-worker that there was a rumor that he was out for the day, but had left the "Read" with another co-worker who had been fired on the day before.  He believes that the rumor emanated from management.  Please respond to his allegation of racial discrimination and indicate whether you had knowledge of this event and if so, if you considered it in your decision to not select Mr. Nesbitt.

Answer 50.     As the manager of the Office of Intelligence, I am copied on numerous emails about various matters, but I do not recall this incident or have any knowledge about the rumor that Mr. Nesbitt alleges. Ms. Newcomb and I had no discussions about this incident when we discussed her reasons for making the selection for this position and I did not consider it in my concurrence with the selection.

Question 51.  Mr. Nesbitt believes that when he was not selected for the position of Deputy Chief, Litigation Section, he was discriminated against on the basis of his race because he alleges that he was employed in the NSD from 2006 to 2010 but only after he expressed an interest in supervisory positions in 2009, did he began to experience problems with management.  He cited as background, a situation in December 2009-January 2010.  He explained that he had asked for a transfer from Counterintelligence (CI) to the Litigation Section because of the above incidents and was granted that transfer on December 7, 2009.  Mr. Nesbitt said that a case he had handled in CI needed to be reassigned.  He explained that he had a technical question on the case and sent an email to an FBI case agent and to an NSD colleague.  He stated that his CI supervisor was very upset over the communication

Page 11 of 12                                                    Witness Initials

**Adept Services, Inc.**

and made a comment to the effect that she didn't know what Nancy would think about this but she felt the communication was inappropriate. Please respond to his allegation of racial discrimination and indicate whether you had knowledge of this event and if so, if you considered it in your decision to not select Mr. Nesbitt.

Answer 51.    As the manager of the Office of Intelligence, I am copied on numerous emails about various matters, but I do not recall this incident or have any knowledge about the comments that Mr. Nesbitt alleges were made. Ms. Newcomb and I had no discussions about this incident when we discussed her reasons for making the selection for this position and I did not consider it in my concurrence with selection.

**Question 52.   Did you consider Mr. Nesbitt's race when you made the selection or concurred with the selection of Mr. Nesbitt?**

Answer 52.    No.

**Question 53.   Do you have any other relevant information to provide?**

Answer 53.    No.

**Question 54.   Do you wish to submit any evidence in support of the information you provided?**

Answer 54.    No.

**Question 55.   Do you have any other relevant information to provide?**

Answer 55.    No.

Pursuant to Title 28 U.S.C. §1746, I declare under the penalty of perjury that the foregoing statement, consisting of ___12___ pages, is true and correct to the best of my knowledge and belief.   I understand the information I have given is not considered confidential and that it may be shown to interested parties.

_____          ___2/14/11_____
Signature of Affiant                               Date Signed

_____          ___2/15/11_____
Signature of Investigator                          Date Signed

Page **12** of **12**

Witness Initials _____

**Adept Services, Inc.**

## PRIVACY ACT NOTICE TO INTERVIEW WITNESSES
### (OTHER THAN COMPLAINANT)
## FOR EMPLOYMENT DISCRIMINATION COMPLAINT INVESTIGATIONS

### GENERAL

This information is provided pursuant to Public law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

### AUTHORITY

The authority to collect the information requested by this interview is derived from one or more of the following: 5 C.F.R. §§ 5.2 and 5.3; 29 C.F.R. §§ 1613 and 1614; 5 U.S.C. §1303 and 1304; 42 U.S.C. § 2000e-16; and Executive Order 11478, as amended.

### PURPOSES AND USES

The information you supply will be use, along with data developed, to resolve or otherwise determine the merits of the complaint of discrimination in the delivery of federally assisted or federally conducted programs or services. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the complaint of discrimination. The information may also be disclosed any agency of the Federal Government having a working relationship with regard to EEO Commission activities, to the intelligence agencies of the Federal Government or to others for uses as published in the Federal Register.

### EFFECTS OF NONDISCLOSURE

Disclosure of the information sought is voluntary; however, failure on the part of Federal employees to furnish the information will result in a direction by the head of the agency or designated representative to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you, up to and including termination. Applicants in such cases may be refused employment. Disclosure of information by present or perspective contractors is also voluntary, although failure to furnish the above requested information where the contract so provides may result in administrative sanctions, including disqualification to enter into a contract, or termination of an existing contract.

_Kathleen Brelur_ 2/15/11
Signature of Investigator

_Belinda Gibson_
Signature of Affiant

_2/14/11_
Date