IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOSHUA NESBITT<br>1629 Tucker Road<br>Fort Washington, Maryland 20744<br>301-573-3278 | )<br>)<br>)<br>)<br>)<br>) | Civil Action No. 12-717 (RWR) |
| Plaintiff, | ) | |
| v. | )<br>) | |
| ERIC H. HOLDER, JR.,<br>Attorney General, United States<br>Department of Justice | )<br>)<br>)<br>)<br>) | |
| Defendant | )<br>) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT

Plaintiff, Joshua Nesbitt, *pro se*, hereby submits this Opposition to Plaintiff's Motion for

Summary Judgment which was filed pursuant to Fed. R. Civ. P. 56(b) and (c). Plaintiff has

alleged in his employment discrimination complaint that he was denied promotion on the basis of

race. Plaintiff is an African-American. Plaintiff alleges that the Defendant engaged in race-

based discrimination through the unequal application of objective criteria, that is to say, that

Defendant mandated Plaintiff's compliance with the application standards contained in the

vacancy announcement in order for Plaintiff to qualify for promotion consideration. However,

the Defendant considered the Caucasian Selectee's application despite the Selectee's failure to

comply with the announced objective application standards and thus, despite the Selectee's

failure to qualify for promotion consideration.  Plaintiff was thereafter denied promotion despite being the most qualified applicant with a complete application.

Once the Plaintiff challenged the selection, the Defendant attempted to justify its continued consideration of the Selectee's application by falsely asserting the existence of a different application standard for internal applicants, such as Plaintiff and the Selectee, which did not require compliance with the objective application standard contained in the vacancy announcement.  This deliberately false assertion is directly contradicted in writing by the Defendant's Director of Human Resources.  In addition, the Defendant simultaneously asserted that no application standards were applied to any applicants, internal or external, but failed to explain what motivated the Defendant to abandon its publicly announced standards.

Defendant, Eric H. Holder, Jr., in his official capacity as Attorney General of the United States, by and through the United States Attorney for the District of Columbia, has failed to fully and candidly address this Court on the issue of the Defendant's contradictory positions regarding which application standard was in effect at the time of the Defendant's decision to consider the Selectee's application and to promote the Selectee.

Instead, while silent regarding the Defendant's prior assertion of a different application standard for internal applicants, and silent regarding the motivation for the abandonment of the publicly announced standard, the Defendant changes the subject, and asserts that based upon a comparison of the  Plaintiff's and the Selectee's relative qualifications, the Plaintiff's claim of discrimination lacks merit.  The Defendant thereafter asserts justifications which the Defendant characterizes as legitimate and non-discriminatory bases for the promotion decision.

Plaintiff submits that the Defendant's shifting and contradictory statements regarding the application standards in effect cannot be reconciled and are pretexts, that is to say, the Defendant

abandoned the publicly announced application standard which was confirmed as applicable to

internal applicants by its Director of Human Resources, falsely asserted the existence of a more

lenient standard for internal applicants, and chose the Caucasian Selectee for promotion in order

to avoid promoting an African-American into the management ranks of the Office of

Intelligence, an office where no African-Americans serve in supervisory positions.

In addition, Plaintiff submits that the qualifications-based justifications asserted by the

Defendant are also pretextual, offered for the sole purpose of masking the race-based

discrimination which was effectuated by the unequal treatment of the African-American Plaintiff

and the Caucasian Selectee as described above.

As discussed more fully in the Plaintiff's Memorandum Of Points And Authorities In

Opposition to Defendant's Motion For Summary Judgment, the facts in dispute which Plaintiff

submits preclude summary judgment are as follows:  (1) whether there was, in fact, a different

application standard for internal applicants which permitted the consideration of the Selectee's

application, or whether that assertion by the Defendant was a false explanation, solely designed

to mask a promotion decision which was the product of race-based discrimination; (2) whether

the Defendant, who admittedly deviated from the publicly announced objective application

standard, a standard confirmed as applicable to internal applicants by Defendant's Director of

Human Resources, did so for the purpose of effectuating a promotion decision which was the

product of race-based discrimination; and (3) whether a  reasonable jury could conclude, based

on the Plaintiff's factually supported rebuttal, that Defendant's asserted non-discriminatory

justifications are false and solely designed to mask a promotion decision which was the product

of race-based discrimination.

Respectfully Submitted,

_____

Joshua W. Nesbitt, *Pro Se*
1629 Tucker Road
Fort Washington, Maryland 20744
(301) 573-3278
joshuawnesbitt@yahoo.com

Date: May 29, 2013

IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JOSHUA NESBITT<br>1629 Tucker Road<br>Fort Washington, Maryland 20744<br>301-573-3278<br><br><br>        Plaintiff,<br>v.<br><br>ERIC H. HOLDER, JR.,<br>Attorney General, United States<br>Department of Justice<br><br><br>        Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 12-717 (RWR) |

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS
## AS TO WHICH THERE IS NO GENUINE DISPUTE

Pursuant to Local Rule 7(h) Plaintiff Joshua Nesbitt hereby submits the following statement of material facts as to which there is no genuine dispute.  Unless otherwise indicated, all of Plaintiff's exhibits are contained in the United States Department of Justice, National Security Division's Report of Investigation (ROI).  The ROI and a letter which the Defendant sent to EEO in September 2010, which is an attachment to the ROI and cited throughout Plaintiff's Opposition, are admissible for this proceeding and at trial pursuant to Federal Rule of Evidence 801(d)(2)(D) as non-hearsay party admissions by the party's agent or servant concerning a matter within the scope of the agency or employment, and Federal Rule of Evidence 803(8) as public records exceptions to the hearsay rule.  English v. District of Columbia, 651 F.3d 1, 7-8 (D.C. Cir 2011).

1.      Plaintiff, a black male of African-American descent, has been employed by Defendant as an attorney since 1992 in the following positions: Assistant U.S. Attorney, Northern District of New York (1992-1999); Trial Attorney, Organized Crime & Racketeering Section in Washington, D.C. (1999-2006); Attorney, Office of Intelligence and its predecessor, the Office of Intelligence Policy & Review (2006-2011); and Trial Attorney, Organized Crime Drug Enforcement Task Force (OCDETF) (2011-present).  **Exhibit A**

2.      When the Plaintiff filed the formal complaint with the Department of Justice Office of Equal Employment Opportunity,  Plaintiff was an Attorney Advisor for the National Security Division (NSD), Office of Intelligence, GS-15, reporting to Ms. Nancy Newcomb (White Female), Chief of Litigation. **Exhibit B, Answers 8-9**

3.      The Office of Intelligence (OI) is divided into three Sections -- Operations, Oversight, and Litigation. The Operations Section is primarily responsible for drafting applications for electronic surveillance and physical searches under the authority of the Foreign Intelligence Surveillance Act (FISA).  **Exhibit C**

4.      The Operations Section is divided into three units. They are the Counterintelligence Unit, the Counterterrorism Unit, and the Special Operations Unit.  Attorneys in the Operations Section appear before the FISA Court in non-adversarial ex parte proceedings held in a sealed courtroom, much like an Assistant U.S. Attorney and federal agent would appear before a United States District Court Judge or Magistrate Judge in a criminal setting when seeking the authority to conduct a wiretap or execute a search warrant.  **Exhibit O, page 2**.

5.      The Oversight Section is primarily responsible with ensuring that the intelligence agencies are in compliance with the law regarding electronic surveillance and physical searches conducted pursuant to FISA or other legal authority. **Exhibit O, page 2.**

6.      The Litigation Section is primarily responsible for working with federal prosecutors who are engaged in espionage and/or terrorism prosecutions, and who want to use FISA-obtained or FISA-derived information in various aspects of the legal proceedings, such as evidence in their direct case, or providing materials which satisfy their <u>Jencks</u>, <u>Brady</u>, or <u>Giglio</u> obligations.  In addition to assessing the litigation risks associated with granting approval to use FISA information, the OI Litigation Section drafts several documents filed under seal for the in camera, ex parte review by the District Court when deciding a defendant's discovery or other motion request which might result in the disclosure of FISA applications, FISA Court orders, or other classified information, the disclosure of which would harm the national security of the United States.  The Litigation Section also handles other matters not associated with FISA Litigation and is the smallest section in OI with, in 2010, a total of six line attorneys, J.N., D.F., R.C, K.T., M.D., and A.M. (four full-time, two part-time), plus the Chief and Deputy Chief. **Exhibit O, page 2**.

7.      In 2009, after Ms. Newcomb's appointment to the position of OI's Litigation Section Chief, she discussed the desire for a Deputy Chief with Deputy Assistant Attorney General Tashina Gauhar.  Together, Joyce Klitenic, the Director of Human Resources, Ms. Newcomb, and Ms. Gauhar, determined the general qualifications and responsibilities for the position of Litigation Section Deputy Chief. **Exhibit B, Answer 11; Exhibit D, Answer 11; Exhibit E, Answers 11 - 15.**

8.      On April 22, 2010, Ms. Newcomb sent an office-wide e-mail to all potential internal applicants indicating the pending announcement regarding "the newly created position of Deputy Chief, Litigation Section, Office of Intelligence."  In the e-mail message, Ms. Newcomb did not indicate that the application standards detailed in the forthcoming announcement were inapplicable to those attorneys already working in OI.  Ms. Newcomb's e-mail also did not affirmatively indicate

the existence of a separate application standard for internal applicants which would make the application process less cumbersome.   **Exhibit F (Defendant's Discovery Production)**.

9.     On April 26, 2010, the public announcement for the Deputy Chief position was posted. Despite the description of the duties for the supervisory position which include working with the Section Chief and federal prosecutors in coordinating criminal and civil litigation related to FISA and attending inter-agency meetings, the public announcement indicates that "past experience in the national security or intelligence field is not required," and contains no indication that prior supervisory/management experience is required, desired, or preferred. **Exhibit G**.

10.     The "Department Policies" section indicates that the Department of Justice is an Equal Opportunity/Reasonable Accommodation Employer and goes on to specify its policy against discrimination on many bases, including race. **Exhibit G**.

11.     To apply for the position,  the "Application Process" section directs all applicants to submit a cover letter highlighting their relevant experience, a writing sample, a law school transcript, and a current performance appraisal, if applicable.  The announcement directs applicants to send these materials to Joyce Klitenic. **Exhibit G**.

12.     On April 26, 2010, Plaintiff sent an e-mail inquiry to Ms. Klitenic, asking whether Plaintiff needed to submit a writing sample and transcript, since Plaintiff had been in OI since 2006. Ms. Klitenic replied "**Yes, Please [sic] submit everything that is requested in the vacancy announcement**."(Emphasis added).   **Exhibit H**.

13.     After receiving Ms. Klitenic's response, later that day, Plaintiff sent an e-mail message to Tammy Green, an NSD Human Resources staff member, requesting assistance in acquiring a copy of Plaintiff's law school transcript from his personnel file.  **Exhibit I**.

14.     Contrary to Ms. Klitenic's affidavit wherein she stated "The Human Resources Office ... would have provided transcripts...upon request to Mr. Nesbitt," **Exhibit E, Answer 24,** Plaintiff received no response at all to the transcript request at any time prior to Mr. Ridge's selection. **Exhibit I**.

15.     On April 27, 2010, Mr. Ridge sent an e-mail message to Litigation Section Chief Nancy Newcomb and Director of Human Resources, Ms. Klitenic, expressing his interest in the Deputy Chief's position and summarizing his qualifications.   Mr. Ridge stated in the e-mail **"My law school transcript should be on file somewhere within the Department and, if necessary, we can discuss what type of writing sample you would like to see in support of my application, although quite honestly, I don't get paid to write."** (Emphasis added).  **Exhibit J**.

16.     Mr. Ridge's e-mail, quite detailed in listing his supervisory experience, the awards that he had earned, and his work before the FISA Court, contains no claim to any experience working with federal prosecutors on FISA Litigation matters pending in the United States District Court. **Exhibit 9**.

17.     At no time prior to Mr. Ridge's selection did Ms. Klitenic direct Mr. Ridge to "Please submit everything that is requested in the vacancy announcement," as she had directed the Plaintiff on the day before Mr. Ridge's e-mail.  It is undisputed that Mr. Ridge did not submit his law school transcript or a writing sample prior to his selection as the Deputy Chief of Litigation. **Exhibit E, Answer 25**

18.     Plaintiff contacted his law school and acquired his transcript.  While waiting for his transcript to arrive, Plaintiff informed Ms. Newcomb that he intended to apply for the Deputy Chief position but was awaiting the receipt of his law school transcript.  Ms. Newcomb did not respond. **Exhibit K, page 25**.

19.     On May 14, 2010,  Plaintiff submitted a formal cover letter, a writing sample, a law school transcript, and a current performance appraisal to Ms. Klitenic's office, which detailed Plaintiff's 23 years as an attorney, including 14 years as a federal prosecutor, Plaintiff's 4 years in OI and Plaintiff's work on complex FISA Litigation matters in OI from 2007 through 2010.  **Exhibit L; Exhibit M  - Nesbitt Performance Appraisal Record, June 2009  "Also during this rating period, [Plaintiff] has continued to work on a complex litigation matter, which has required him to take several trips out of the office."**

20.     After submitting his application, Plaintiff had an informal discussion regarding the Deputy Chief's position with Nancy Newcomb on April 27, 2010.  Ms. Newcomb indicated that she wanted someone who could operate in her place, and someone who could attend meetings that her schedule did not permit.  At no time did Ms. Newcomb inquire of Plaintiff's past "high-level meeting" experience.  **Exhibit K, pages 6 -7**.

21.     On May 20, 2010, Ms. Newcomb conducted the formal interview with the Plaintiff. One of the issues discussed was how Plaintiff would address what Ms. Newcomb described as the "knowledge deficit" amongst the Litigation Section attorneys regarding the Federal Rules of Criminal Procedure and the Classified Information Procedures Act (CIPA).  Plaintiff suggested that someone from NSD's Counter-Terrorism Section or Counter-Espionage Section be asked to give a presentation.  Once again, at no time did Ms. Newcomb inquire of Plaintiff's past "high-level meeting" experience.  **Exhibit K, page 7**.

22.     On May 28, 2010, Ms. Newcomb announced Mr. Ridge's selection as the new Litigation Section Deputy Chief. In the e-mail message, Ms. Newcomb indicated that Mr. Ridge excelled in Operations and Oversight (an assessment undisputed by the Plaintiff), that he served for four years as a Deputy Chief in the Department of Justice's Capital Case Unit, and served 11 years

as an Assistant State's Attorney in Miami.  Once again, noticeably absent in Ms. Newcomb's e-mail was any mention of Mr. Ridge's FISA Litigation experience.   **Exhibit N** .

23.     Prior to the formal announcement of Mr. Ridge's selection, Plaintiff was informed of the selection decision by Ms. Newcomb.  Ms. Newcomb justified Mr. Ridge's selection to Plaintiff by indicating that Mr. Ridge had litigation and supervisory experience, and knowledge of the FISA Amendments Act (FAA).  **Exhibit K, page 7**.

24.     At the same time that Deputy Assistant Attorney General Gauhar approved Mr. Ridge's selection as the Deputy Chief of Litigation, despite his lack of FISA Litigation experience, she also approved the selection of a supervisory attorney from the Operations Section to become the Deputy Chief of the Oversight Section, a section in which Mr. Ridge served with distinction, and where he received several awards for his work from 2008 to 2010.  **Exhibit O, page 4, paragraph 2**.

25.     Because of Plaintiff's earlier promotion-related experience in OI from 2009, and the facts stated above, in June 2010, Plaintiff contacted the Department of Justice Office of Equal Employment Opportunity. (EEO)  **Exhibit K page 10**.

26.      In August 2010, EEO sent questions to the Defendant regarding the application process for the selection of the Deputy Chief of Litigation.  Several of the questions requested information regarding what Plaintiff mistakenly believed was the late submission of Mr. Ridges's law school transcript, as opposed to his complete failure to submit one, and any communications between the Defendant and Mr. Ridge regarding the late submission.  In addition, EEO posed questions regarding the nature of Mr. Ridge's writing sample and the bases upon which it was judged superior to the Plaintiff's writing sample.  **Exhibit P**.

27.     The Defendant responded to EEO's questions and presented several ostensibly non-discriminatory bases for Mr. Ridge's selection.  The letter was written by Ms. Janice Kaye, Of Counsel for the Defendant on the instant motion.  However, according to Ms. Kaye, the information contained in the Defendant's letter to EEO was provided by Joyce Klitenic, Nancy Newcomb, and Tashina Gauhar.  **Exhibit O, page 1, paragraph 1.**

28.     In response to EEO's questions regarding Mr. Ridge's law school transcript and writing sample,  Ms. Klitenic, Ms. Newcomb, and Ms. Gauhar, indicated that "**Although the posting did not differentiate between internal and external candidates, internal candidates did not have to submit a law school transcript, current performance review or writing sample for their application to be considered complete because these materials already were available to NSD staff.**" (Emphasis added).  **Exhibit O, page 3, paragraph 2**.

29.     The Defendant's statement to EEO fully contradicts the April 26, 2010, direction from Ms. Klitenic to internal candidate Plaintiff, to comply with the  application standard contained in the vacancy announcement.  **Exhibit H**.

30.     Ms. Newcomb, Ms. Gauhar, and Ms. Klitenic, were either unaware of or did not remember Ms. Klitenic's e-mail direction to internal candidate Plaintiff when they informed EEO of a supposedly different application standard for internal applicants.  **Exhibit B, Answer 45; Exhibit D, Answer 44; Exhibit E, Answer 24.**

31.     However, being aware of or having remembered the email between Plaintiff and Ms. Klitenic, Ms. Newcomb, Ms. Gauhar, and Ms. Klitenic, when answering the questions asked by the Department of Justice's Investigator in their respective affidavits, each failed to affirmatively reassert the existence of a separate application standard for internal applicants, despite being given multiple opportunities to do so, under penalty of perjury.  **Exhibits B, D, and E.**   Ms. Newcomb simply

indicated that she assumed Mr. Ridge's transcript and writing sample were on file with NSD, but does not indicate the existence of a separate application standard for internal applicants which differed from the standard contained in the vacancy announcement. **Exhibit B, Answer 25.**

32.     Also, being aware of or having remembered the email between Plaintiff and Ms. Klitenic, when they were answering the questions asked by the Department of Justice's Investigator in their respective affidavits, neither Ms. Newcomb nor Ms. Gauhar indicated under penalty of perjury, that Ms. Klitenic's direction to the Plaintiff was made in error.   **Exhibit B; Exhibit D**

33.     Although Ms. Newcomb was aware that Plaintiff had worked on FISA Litigation matters with her two immediate predecessors, the Defendant told  EEO only that Plaintiff joined the Litigation Section in December 2009.  **Exhibit L;  Exhibit O, page 4, paragraph 1**.  In addition, Ms. Newcomb and Ms. Gauhar are silent as to the full extent of the Plaintiff's FISA Litigation experience in their respective affidavits.  **Exhibit B, Answers 38, 46; Exhibit D, Answer 40.**

34.     There were only three internal applicants for the Deputy Chief of Litigation position. **Exhibit O, page 3, paragraph 2**.

35.     Plaintiff, a black male of African-American descent, was an  internal applicant, who was a full-time member of Litigation Section, who had  3 years of FISA Litigation experience, and whose application was complete in accordance with the vacancy announcement and the direction of the Director of Human Resources.  **Exhibit L**.  Defendant admits that Plaintiff is qualified for the position of Deputy Chief of Litigation.  **Exhibit B, Answer 19; Exhibit E, Answer 19**.

36.     The second internal applicant was a Caucasian female who had the least legal experience of the three internal applicants and the shortest tenure with the Department of Justice and NSD.  This applicant, who worked part-time in the Litigation Section, submitted an application

package in compliance with application standard in the vacancy announcement.   **Exhibit O, page 3-4; Exhibit X**.

37.     Mr. Ridge, the selectee, was a Caucasian internal applicant, who was not in the Litigation Section, who had no FISA Litigation experience, and whose application failed to comply with the application standard in the vacancy announcement.   **Exhibit B, Answer 25; Exhibit O, page 3, paragraphs 3 and 4**.

38.     Mr. Ridge's application was nevertheless considered by Ms. Newcomb, who asserted that she believed all of the applications forwarded to her "met all of the qualifications."   **Exhibit B, Answer 23**.

39.     Throughout Plaintiff's tenure at OI, between 2006 and 2010, Plaintiff earned the highest rating in each performance element and the highest possible overall rating in each yearly performance evaluation.   **Exhibits M, Y, Z, and AA**.   In Plaintiff's first performance evaluation after the Defendant was notified of Plaintiff's contact with EEO, Mr. Ridge and Ms. Newcomb, without comment, lowered the assessment of Plaintiff's work.   **Exhibit BB**.   (Performance Evaluations were supplied by Defendant's Office of Human Resources)

## DEFENDANT'S STATEMENTS OF MATERIAL FACT
## WHICH PLAINTIFF DISPUTES

40.     Plaintiff disputes the last sentence in paragraph 4 of the Defendant's Statement of Material Facts.   The statement, referring to Ms. Newcomb, reads "She presumed that all of the applications provided to her for review met the applicable standard."   There is no doubt that this is what Ms. Newcomb said, but Plaintiff challenges whether what was said by Ms. Newcomb is factual for the following reason: In response to Question 20 of her affidavit, Ms. Newcomb indicates "I am

unaware of any process to screen, rate, or rank the applicant's packages. I was informed that NSD's Human Resources Office gave me all of the application packages without any apparent sorting or categorization." **Exhibit B.** Knowing that no review of the application packages was conducted before Ms. Newcomb received them, Plaintiff challenges whether Ms. Newcomb, in fact, presumed anything regarding whether the packages "met all of the qualifications" at the time of receipt. By Ms. Newcomb's own admission, there was no factual support for such a presumption, as she had knowledge of evidence to the contrary.

41.     Plaintiff disputes the second clause of paragraph 10 as mischaracterizing the statement Plaintiff made to the Department of Justice Investigator in his affidavit. Plaintiff was asked " Why do you believe you are better qualified than the selectee?   Plaintiff responded in part..."My involvement with [FISA] Litigation since 2007, and being a member of the Unit since December of '09, already doing the work of the section and working closely with the Chief of the Litigation Section, I believe that I was the best qualified. And, you know, I admit that one could quibble over what experience is best...and that's a judgement call...but now knowing the facts...that Mr. Ridge did not even submit a complete application, I think that that left me as the most qualified person with a completed application, was already in the Litigation Section, and had a ton of litigation experience, I should be selected." **Exhibit K, page 22 - 23.**

42.     Plaintiff submits that the plain meaning of the full statement is clear, that if Mr. Ridge had submitted a complete application, then one, i.e. a fair-minded person, could quibble regarding whether his management experience or Plaintiff's FISA and federal litigation experience is best suited for the position of Deputy Chief of Litigation. But, as the Defendant admits, Mr. Ridge did not submit an application in compliance with the application standard in the vacancy announcement. Therefore, despite Defendant's efforts to mischaracterize Plaintiff's statement,

Plaintiff did not state or imply that the Defendant's promotion  decision was simply a judgment call in choosing between well qualified applicants.

IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————
                                                  )
JOSHUA NESBITT                                    )
1629 Tucker Road                                  )
Fort Washington, Maryland 20744                   )      Civil Action No. 12-717 (RWR)
301-573-3278                                       )
                                                  )
                                                  )
          Plaintiff,                              )
v.                                                )
                                                  )
ERIC H. HOLDER, JR.,                              )
Attorney General, United States                   )
Department of Justice                             )
                                                  )
                                                  )
          Defendant                               )
———————————————————)

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Joshua Nesbitt, *pro se*, hereby respectfully submits this Memorandum of Points and

Authorities in opposition to the Defendant's Motion for Summary Judgment.

### STATEMENT OF THE CASE

1.      On or about April 26, 2010, the Department of Justice (DOJ), National Security

Division (NSD) (the Defendant), posted an announcement for the position of Deputy Chief of

Litigation in the Office of Intelligence. **Exhibit G**.  On May 14, 2010,  Plaintiff applied for the

position by submitting a formal cover letter, a writing sample, a law school transcript, and a current

performance appraisal to the Director of Human Resources. **Exhibit L**.  On May 28, 2010, Litigation

Section Chief Nancy Newcomb announced the selection of Paul Ridge as the new Deputy Chief of

Litigation. **Exhibit N.**  On or about June 11, 2010, Joshua W. Nesbitt (Plaintiff) contacted the DOJ's Equal Employment Opportunity Office (EEO). **Exhibit K page 10.**

2.      In August 2010, EEO sent a list of questions to the Defendant regarding the selection of Mr. Ridge **Exhibit P**.  In a letter dated September 2, 2010, NSD responded to EEO's questions in a four-page letter. **Exhibit O.**  On October 5, 2010, Plaintiff filed a Complaint of Discrimination with the Defendant alleging that the denial of promotion to the position of Deputy Chief of Litigation was the result of race-based (African- American) discrimination. **Exhibit Q**.

3.      On December 29, 2010, Plaintiff provided an affidavit regarding the Complaint via an in-person recorded interview with the EEO Investigator. **Exhibit K.**   In February 2011, the Defendant's officials Nancy Newcomb, Tashina Gauhar, and Joyce Klitenic, provided written affidavits to the EEO Investigator.  **Exhibit B, Exhibit D, Exhibit  E.**

4.      Plaintiff commenced the present action by filing a Complaint in United States District Court on May 3, 2011, alleging discrimination based on race in the Defendant's denial of Plaintiff's promotion to the position of Deputy Chief of Litigation in the Office of Intelligence (OI). **Exhibit A**.

5.      On May 13, 2013, the Defendant filed the present Renewed Motion For Summary Judgment.

**STATEMENT OF FACTS**

1.      The Plaintiff adopts as his Statement of Facts, the Plaintiff's Statement Of Material Facts As To Which There Is No Genuine Dispute, appended hereto.

## MEMORANDUM OF LAW

### I.   LEGAL STANDARDS

### A.   Discrimination Based Upon Race

1.     Under Title 42, United States Code §§ 2000e-2 *et seq*. (Title VII), it is an unlawful employment practice for an employer to discriminate against any individual with respect to his conditions, or privileges of employment because of that individual's race. Evans v. District of Columbia, 754 F. Supp.2d. 30 (D.D.C. 2010). "The two essential elements of a discrimination claim under this section are that (I) plaintiff suffered an adverse employment action, (II) because of plaintiff's [race]." Evans, 754 F.Supp.2d at 43.

### B.   Adverse Employment Action

2.     A "plaintiff bears the burden of showing a tangible employment action evidenced by firing, failing to promote, a considerable change in benefits, or reassignment with significantly different responsibilities." Stewart v. Ashcroft, 352 F.3d 422, 426 (D.C. Cir. 2004). "A plaintiff who is ...denied a lateral transfer - that is, one in which [he] suffers no diminution in pay or benefits - does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions or privileges of [his] employment or [his] future employment opportunities, such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm." Stewart, 352 F.3d at 426.

3.     In the instant case, the Deputy Chief of Litigation supervises and directs six attorneys (some full-time and some part-time) in relation to FISA Litigation filings in the United States District Court, and according to Deputy Assistant Attorney General Gauhar, also represents the Litigation Section in numerous high-level meetings relating to national security matters with the FBI and other agencies of the Intelligence Community. **Exhibit D, Answer 35.** The Deputy Chief of

Litigation also fulfills the Chief's management and other duties in the Chief's absence. **Exhibit D, Answer 34**. Therefore, non-selection as the OI Deputy Chief of Litigation "has objective, tangible, and materially adverse consequences for the terms. conditions and privileges of [Plaintiff's] employment because [the Defendant] has denied him the opportunity to advance within the hierarchy of [OI] and [the Department of Justice] more generally." Stewart, 352 F.3d at 426.

## C.   Adverse Employment Action Suffered Because of Discrimination

4.      Where the plaintiff has no direct evidence that the adverse employment action was caused by prohibited discrimination, federal courts have analyzed discrimination claims under the framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the McDonnell framework, the plaintiff must establish a prima facie case of discrimination. "To establish a prima facie case of discriminatory non-promotion, the plaintiff must show that: (1) he is a member of a protected class; (2) he applied for and was qualified for an available position; (3) despite his qualifications he was rejected; and (4) someone [not of Plaintiff's class] filled the position." Lathram v. Snow, 336 F.3d 1085, 1088 (D.C.Cir. 2003); Machakos v. Meese, 647 F.Supp. 1253, 1262 (D.D.C. 1986). In the instant case: (1) Plaintiff is African-American; (2) Plaintiff applied for the position and, as conceded by Ms. Newcomb and Ms. Klitenic, Plaintiff is qualified to be the Deputy Chief of Litigation. **Exhibit B, Answer 19; Exhibit E, Answer 19**; (3) Plaintiff was not selected; and (4) Mr. Ridge (Caucasian) was selected, despite his lack of FISA Litigation experience and his submission of an incomplete application.

5.      However, in Title VII disparate treatment cases, "where the employee has suffered an adverse employment action, and the employer has asserted non-discriminatory reasons for the promotion decision, the district court need not and should not decide whether the employee actually made out a prima facie case under McDonnell Douglas. "Rather, in considering the employer's

motion for summary judgment as a matter of law...the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reasons was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race..." Brady v. Office of the Sergeant At Arms, 520 F.3d 490, 494, (D.C. Cir. 2008).

**D.     SUMMARY JUDGMENT**

6.      Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P.56(a).   The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2553 (1986).  A fact is only material if it is capable of affecting the outcome of the litigation. Anderson v. Liberty Lobby, Inc., 106 S.Ct. at 2510.

7.      To defeat summary judgment, the non-moving party must "designate specific facts showing there is a genuine issue for trial. Celotex Corp. v. Catrett, 106 S.Ct. at 2553.  Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 106 S.Ct. at 2510.

8.      If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. Moore v. Harman, 571 F.3d 62, 66 (D.C. Cir. 2009).

9.      When faced with a motion for summary judgment, the district court may not make

credibility determinations or weigh the evidence; instead the evidence must be analyzed in the light

most favorable to the non-movant, with all justifiable inferences drawn in the non-movant's favor.

Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2513 (1986).  The court must consider whether the

jury could infer discrimination from all of the evidence, including (1) the plaintiff's prima facie case;

(2) any evidence the plaintiff presents to attack the employer's proffered explanation; and (3) any

further evidence of discrimination that may be available to the plaintiff. Aka v. Washington Hospital

Center, 156 F.3d 1284, 1289 (D.C. Cir. 1998); Boone v. Clinton, 675 F.Supp.2d 137, 143 (D.D.C.

2009).  The plaintiff need not present evidence in each of these categories in order to avoid summary

judgment.  Aka v. Washington Hospital Center, 156 F.3d at 1289.  Rather, the court should assess

the plaintiff's challenge to the employer's explanation in light of the totality of the circumstances

of the case.  Aka v. Washington Hospital Center, 156 F.3d at 1291.

10.      "Pretext may be established directly by persuading the court that a discriminatory

reason more likely motivated the employer or indirectly by showing that the employer's proffered

explanation is unworthy of credence." Boone v. Clinton, 675 F.Supp.2d at 144.  "However, it is

insufficient to simply show that a reason given for a job action is not just, or fair, or sensible; instead,

the plaintiff must establish that the explanation given is a phony reason."  Id.

II.   **THE DEFENDANT'S APPLICATION PROCESS WAS CORRUPTED FOR THE PURPOSE OF EFFECTUATING RACE-BASED DISCRIMINATION AND THE DEFENDANT'S ASSERTED NON-DISCRIMINATORY REASONS FOR THE DENIAL OF PROMOTION ARE PRETEXTS FOR RACE-BASED DISCRIMINATION**

A.   **The Application Process**

I.   **Ms. Newcomb and Ms. Gauhar Falsely Asserted To EEO That The Application Requirements For Internal And External Applicants Differed From That Contained In the Vacancy Announcement**

11.   "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and may be quite persuasive. Proving the employer's reason false becomes part of and often considerably assists the greater enterprise of proving that the real reason was intentional discrimination.   In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.   Such an inference is consistent with **the general principle of evidence law that the fact-finder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt**." Reeves v. Sanderson, 530 U.S. 133, 147 (2000).   (Emphasis added).

12.   The information provided by Ms. Newcomb, Ms. Gauhar, and Ms. Klitenic, to the EEO indicated that "**internal candidates did not have to submit a law school transcript, current performance review or writing sample for their application to be considered complete because these materials already were available to the Defendant staff. Exhibit O, page 3, paragraph 2.** (Emphasis added).   There can be no doubt that the requirements for a candidate's application to be considered complete is a "material fact" in a disparate treatment context.   Had the Defendant applied the application standard in the vacancy announcement, Mr. Ridge would have been disqualified for

promotion consideration. In addition, in light of Ms. Klitenic's April 26, 2010, direction to internal candidate Plaintiff to submit everything that is requested in the vacancy announcement, **Exhibit H**, there is also no doubt that Ms. Newcomb, Ms. Gauhar, and Ms. Klitenic made a deliberately false assertion to EEO about that material fact.

13.     There are several observations Plaintiff makes about this false assertion. The false assertion was made because Ms. Newcomb, Ms. Gauhar, and Ms. Klitenic never knew or did not remember that Plaintiff had made a written inquiry and received a written response from Ms. Klitenic. According to Ms. Klitenic's affidavit, **"I do not recall Mr. Nesbitt's inquiry..." Exhibit E, Answer 24**. According to Ms. Gauhar's affidavit, **"I have no first-hand knowledge of communications between Mr. Nesbitt and Ms. Klitenic. I found out about this only after Mr. Nesbitt told certain members of [The Defendant's] management...during the course of these proceedings." Exhibit D, Answer 44**. According to Ms. Newcomb's affidavit, **"I have no first-hand knowledge of communications between Mr. Nesbitt and Ms. Klitenic." Exhibit B, Answer 45**. Plaintiff submits that Ms. Newcomb, Ms. Gauhar, and Ms. Klitenic would never have made that particular false assertion to EEO if they knew or remembered that the false assertion could be immediately disproved.

14.     In addition, in the Defendant's Answer to Plaintiff's Complaint, the Defendant states as follows: "Defendant avers that NSD's Human Resources Office filled more than 80 positions in 2010 and staff cannot recall every conversation with every applicant. **Exhibit R, Answer 17**.

15.     Plaintiff submits that the Defendant had only to remember one fact, that is, which application standard was applicable to internal applicants, either the one in the vacancy announcement or some other standard. Defendant did not have to remember with whom the Defendant spoke or

where the conversation took place.  Defendant only had to repeat the one fact, the one truth, however many times, in whatever circumstance.

16.     Also, not only did Ms. Newcomb, Ms. Gauhar, and Ms. Klitenic make a false assertion to EEO, but they also made the same false assertion to the Defendant's representatives before the EEO.  Ms. Kaye,  Of Counsel on the instant motion, and Mr. Donald Vieira, the then-AAG's Chief of Staff, were caught off guard when the Plaintiff presented them with written proof of Ms. Klitenic's direction to the Plaintiff to submit everything that was requested in the vacancy announcement.  After a break in the proceeding, Ms. Kaye and Mr. Vieira returned to tell the Plaintiff that the Defendant just forgot to tell the Plaintiff of the different application requirements for internal candidates.  **Exhibit K, page 25**.

17.     If Ms. Kaye's and Mr. Vieira's statement was meant to imply that the Defendant simply forgot to notify only the Plaintiff of the different application standard before the application deadline, that statement is incredible.  As noted in the Plaintiff's Statement Of Material Facts, Ms. Newcomb's e-mail to the universe of internal applicants contained no mention of a more lenient application standard for internal applicants.  **Exhibit F.**  In addition, the second internal applicant submitted an application package in compliance with the requirements in the vacancy announcement, which included a cover letter, law school transcript, and a writing sample.  **Exhibit X**.  There's no evidence in the ROI, and the Defendant has not produced evidence in discovery, that supports the notion that Ms. Newcomb told anyone of a different application standard for internal applicants at any time prior to the Plaintiff's challenge to Mr. Ridge's selection.

18.     If Ms. Kaye's and Mr. Vieira's statement implied that the Defendant forgot to tell the Plaintiff that the application standard was changed at sometime after the closing date, then their

statement is likely true, as there would be no benefit to the Plaintiff in acquiring such knowledge after Plaintiff had already submitted a complete application package.   **Exhibit K, page 26**.

19.    Further undermining the Defendant's claim of a different application standard for internal applicants, is Ms. Klitenic's response to Question 24 in her affidavit.  Ms. Klitenic indicates that "the Human Resources Office...would have provided transcripts and other documents upon request ...to any other internal applicant..." **Exhibit E, Answer 24**

20.    First, Ms. Klitenic's statement is consistent with her direction to internal applicant Plaintiff, and demonstrates that the standard in the vacancy announcement was applicable to internal applicants.  Secondly, in the current context wherein Ms. Klitenic is providing an affidavit in relation to an employment discrimination claim in which the Plaintiff alleges that the Selectee's application was incomplete, and the Defendant counters by indicating that internal applicants did not need to comply with the application standard in the vacancy announcement, it defies logic for Ms. Klitenic to assert that she would have provided to internal applicants, documents which the Defendant claims the internal applicants did not need for their applications to be considered complete.  **Exhibit E, Answer 24; Exhibit O**.

21.    Moreover, please note that after the false assertion had been disproved by Ms. Klitenic's email, Ms. Newcomb, Ms. Gauhar, and Ms. Klitenic made no mention of a different application standard for "internal candidates versus external candidates" in their respective affidavits, under penalty of perjury.  Furthermore, neither Ms. Newcomb nor Ms. Gauhar indicate in their affidavits that Ms. Klitenic's direction to the internal applicant Plaintiff was in error.  **Exhibit B, Exhibit D, Exhibit E** .

22.    In addition to the falsely asserted different application requirements for internal and external candidates, Ms. Newcomb and Ms. Klitenic offered a different and markedly less credible

explanation for their actions in the selection of the Deputy Chief of Litigation, by asserting that all application standards were abandoned for everyone in the selection process. Ms. Klitenic, the Director of Human Resources, previously quite clear regarding the need to submit "everything that is requested in the vacancy announcement," **did not screen, rate, or rank the applications**," and simply **"collected the applications and forwarded them to Ms. Newcomb." Exhibit E, Answers 20 and 21.** And according to Ms. Newcomb, who since 2009, collaborated with Ms. Klitenic and Ms. Gauhar in the creation of the position and application requirements, **"I am unaware of any process to screen, rate, or rank the applicants' packages...The Human Resources Office gave me all of the application packages without any apparent sorting or categorization," Exhibit B, Answer 20, and "The presence or absence of any particular piece of the application package had no bearing...in the selection process." Exhibit B, Answer 23.** These comments were made in relation to **all** the application packages, not just the internal applicants' packages.

23. In order to credit Ms. Klitenic's and Ms. Newcomb's statements that there was no process to screen, rate, or rank any of the applicant packages, and that no application standards were applied to internal or external applicants, the trier of fact would have to find that Ms. Newcomb, Ms. Gauhar, and Ms. Klitenic, since 2009, worked together to consider the duties and responsibilities of the prospective Deputy Chief of Litigation, including when and how to apply, and after sober reflection, decided on what materials would most likely identify the ideal candidate, whether internal or external. And once the public announcement was made in 2010, they reversed themselves and completely abandoned the process so carefully developed, in the total absence of some seminal event. **See Exhibit B, Answer 11; Exhibit D, Answer 11; Exhibit E, Answers 11 - 15**

24. Also, if there was, in fact, no application standard applied to any applicants, internal or external, then when responding to EEO's questions related to Mr. Ridge's transcript and writing

sample, which were posed well after the selection process was over, there was no need for Ms. Newcomb, Ms. Gauhar, and Ms. Klitenic to distinguish the application standard for the internal applicants versus external applicants.   They only needed to say that the announced application standards were abandoned for everyone.

25.    Ms. Klitenic's direction to the Plaintiff and willingness to assist other internal applicants to acquire the documents for the application submissions supports the conclusion that there was only one application standard, the one contained in the vacancy announcement, the standard with which Mr. Ridge did not comply.  The Defendant has issued a series of false assertions, with no corroboration in the record, made only after Plaintiff challenged Mr. Ridge's selection.  But it is these false assertions which the Defendant uses to justify promotion consideration of Mr. Ridge's incomplete application, the result of which was to deny promotion to the most qualified candidate with a complete application, the African-American applicant.

26.    The Defendant's statements in this regard are inconsistent and contradictory.  On these facts, a reasonable jury could find that only one application standard was in existence and that based on the inconsistent and contradictory nature of the Defendant's post-hoc false assertions, that the false assertions were offered to mask the truth about the application process.  A reasonable jury could then conclude that the decision to consider Mr. Ridge's incomplete application and promote Mr. Ridge was the product of race-based discrimination.  "The fact that an employer has offered inconsistent post-hoc explanations for its employment decisions is probative of pretext."  Dennis v. Columbia Colleton Medical Center, Inc., 290 F.3d 639, 646 (4th Cir. 2002).

## II.    Mr. Ridge's Incomplete Application

27.    In Machakos v. Meese, 647 F.Supp. 1253 (D.D.C. 1986), in its unsuccessful defense of a reverse-discrimination claim based upon a series of promotion denials, the Department of Justice

offered evidence to show that in one instance, Ms. Machakos had submitted an incomplete application packet, and the Court acknowledged that every denial of promotion in that case was not for an improper reason. Machakos, 647 F.Supp. at 1263.

28.    In   Hamilton v. Geithner, 616 F.Supp.2d 49 (D.D.C. 2009), when Hamilton complained that the selectee did not submit a complete application until after the application deadline had passed, the Court noted that "...**even assuming that [the selectee's] application should have been deemed "incomplete" due to the lack of the current performance appraisal...and therefore rejected for consideration, there is no evidence in the record that the...selecting official, knew of the discrepancy**." Hamilton v. Geithner, 616 F.Supp.2d at 58 (Emphasis added).

29.    In the instant case, Ms. Newcomb reviewed the applications and knew Mr. Ridge's application was incomplete.  Ms. Newcomb admits "The presence or absence of any particular piece of the application package had no bearing...in the selection process." **Exhibit B, Answer 23**.  Despite the requirements of the announcement which were selectively enforced as to Plaintiff, Ms. Newcomb retained Mr. Ridge's application for consideration and eventual promotion.  The Court in Machakos stated, "The Court notes with interest, the Departments rigid adherence to ...application requirements in this instance, while willing to be more accommodating in other cases to black applicants." Machakos, 647 F.Supp. at 1259.  The Machakos court points to the same dynamic evident in the instant case where: (a) the Defendant required the Plaintiff's rigid adherence to the application requirements, and (b) the Defendant was far more accommodating to a non-minority applicant to whom no such application standards were applied.  As both Machakos v. Meese and Hamilton v. Geithner suggests, Mr Ridge's application should have been deemed incomplete and rejected for consideration.

## III.   Violations of Protocol

30.    "A violation of protocol may be probative of the employer's true motivation if (1) the violation is suspicious, in and of itself, (2) the agency "inexplicably departed" from its normal procedures, or (3) the violation inherently raises credibility questions." Perry v. Shinseki, 783 F.Supp.2d 125, 139 (D.D.C. 2011).  In the instant case, the Defendant's true motivation for choosing Mr. Ridge over the Plaintiff is evident, as all three violations of protocol are met : (a) the violation is suspicious - There is no logic in departing from a process carefully and collectively agreed upon over several months at the moment it is to be implemented; **See Exhibit B, Answer 11; Exhibit D, Answer 11; Exhibit E, Answers 11 - 15;** (b) the agency "inexplicably departed" - Apart from the false assertions discussed above, the Defendant offers no explanation for its departure from the stated application process for all applicants; and (c) the violation inherently raises credibility questions - the Defendant made false assertions about the application standards for internal versus external applicants and simultaneously offered a contradictory explanation.  See also  Turner v. Baylor Richardson Medical Center, 476 F.3d 337,346 (5th Cir. 2007) ( "Title VII does not protect employees from the arbitrary employment practices of their employer, only their discriminatory impact.");  Stern v. Trustees of Columbia University in City of New York, 131 F.3d 305, 313 (2nd Cir. 1997) ("While we do not second-guess an employer's hiring standards, the reasons for its employment decision, including its alleged reliance on such standards, are subject to scrutiny under Title VII, and departures from procedural regularity, for example, can raise a question as to the good faith of the process where the departure may reasonably affect the decision."); Kinsey v. First Regional Securities, Inc., 557 F.2d 830 837 (D.C. Cir. 1977) ("As exhibited here, such non-uniform and unequal application of criteria by an employer constitutes an unfair employment practice").

31.    In <u>Fields v. Johanns</u>, 574 F.Supp.2d 159 (D.D.C. 2008), Fields, a black female, was denied promotion to two Administrative Management Services (AMS) positions with the United States Department of Agriculture (USDA), for which two white males were selected. 574 F.Supp.2d at 160-161. Fields claimed that USDA discriminated against her, asserting that she was not selected for either position because of her race and gender. Id. at 160-161. Fields also claimed that one of the white male selectees (Nagel) was preselected in violation of USDA regulations. Id at 163-164. USDA moved the Court for summary judgment. Id. at 160.

32.    Fields provided evidence in support of her preselection claim. Id at 163-164. In support of her claim that her interviews for the AMS positions did not comport with the USDA regulations, Fields asserted that the violation occurred because an EEO representative was not present. Id. at 164. USDA countered that the regulations cited by Fields did not apply at the time of Fields' interview. Id. The Court, in denying USDA's motion for summary judgment, held as follows:

> There is a factual dispute between the parties as to which set of regulations applied at the time of Fields' application. This factual dispute is material because failure to follow established procedures may demonstrate pretext. Thus a reasonable jury might find that USDA failed to follow its own procedures...And...a reasonable jury might also find that the USDA violated regulations by preselecting Nagle. Taken together, there is sufficient evidence whereby a jury might find that Fields was subjected to discrimination on the basis of her race and gender."

Id. at164.

33.    Plaintiff submits that based on the facts of this case and in the context of the Defendant's inconsistent and contradictory statements, the trier of fact could reasonably conclude that Ms. Newcomb and Ms. Gauhar determined that if they followed the rules which they had established for the selection of the Deputy Chief of Litigation, they would have had no choice but to select the Plaintiff, the most qualified applicant with a complete application, an applicant who was in the

Litigation Section, an applicant with three years FISA Litigation experience, and an African-American.

34.     However, Plaintiff's race proved to be the seminal event which motivated Ms. Newcomb's and Ms. Gauhar's abandonment of the application standard and the consideration of Mr. Ridge's incomplete application. Thus, Ms. Newcomb and Ms. Gauhar, in order to avoid promoting an African-American into management, instead promoted Mr. Ridge, a Caucasian, who was not in the Litigation Section, who had no FISA Litigation experience, and who had submitted an incomplete application.

35.     Ms. Newcomb, Ms. Gauhar, and Ms. Klitenic then made false assertions to EEO about the selection process in an attempt to hide the truth about their actions. But their efforts were exposed by the Plaintiff's production of Ms. Klitenic's e-mail to Plaintiff, an e-mail record which Ms. Newcomb and Ms. Gauhar did not know existed when they made the false assertions. Taken together, the Defendant's failure to follow the application procedures it voluntarily put into place and it's false assertions regarding which procedures were in effect, present sufficient evidence by which a jury might find that Plaintiff was subjected to discrimination on the basis of race.

36.     Therefore, in accordance with the facts and the law as stated above, Plaintiff submits that summary judgment is precluded because the trier of fact must determine (1) whether there was, in fact, a different application standard for internal applicants which permitted the consideration of Mr. Ridge's application or whether that assertion by the Defendant was in fact a false explanation, solely designed to mask a promotion decision which was the product of race-based discrimination; and (2) whether the Defendant, who admittedly deviated from the objective application standard in the vacancy announcement, a standard confirmed by Defendant's own Director of Human Resources,

did so for the purpose effectuating a promotion decision which was the product of race-based discrimination.

**B.      The Defendant's Asserted Non-Discriminatory Reasons**

37.      In Colbert v. Tapella, 649 F.3d 756 (D.C. Cir. 2011), Colbert, an African-American woman, was not promoted to either of two available openings within the Government Printing Office, positions which were eventually awarded to two Caucasian males. Colbert, 649 F.3d at 757. Colbert sued under Title VII alleging race and gender discrimination. Id. The District Court granted summary judgment for the defendant. In the course of reversing the District Court, and ruling that a reasonable jury could find in Colbert's favor, the Court of Appeals noted the following: "the district court, relying on Adeyemi v. District of Columbia, 525 F.3d 1222, 1227 (D.C. Cir. 2008), found that nothing Ms. Colbert offers...sufficient to show that she was significantly better qualified than [the selectees]. Adeyemi held, when an employer says it made a hiring or promotion decision based on the relative qualifications of the candidates, the plaintiff can directly challenge that qualifications-based explanation only if the plaintiff was significantly better qualified for the job than those ultimately chosen...The qualifications gap must be great enough to be inherently indicative of discrimination. **But Adeyemi is not controlling here because Colbert is not using her comparative qualifications to prove discrimination. Rather, Colbert uses her qualifications to show this is not the exceptional case in which the record conclusively revealed some other non-discriminatory reason**." (Emphasis added) Colbert, 649 F.3d at 760.

38.      Plaintiff in the instant case occupies the same position as Ms. Colbert, using his qualifications to show that, in this case, the record does not conclusively reveal some other non-discriminatory reason supporting the denial of promotion decision. In Plaintiff's Affidavit, in response to the Defendant's Investigator's question "Why do you believe that you were discriminated

against on the basis of your race when you were not selected," Plaintiff responded, in part "...Certainly it wasn't on the basis of my lack of experience.  It certainly wasn't on the basis of my lack of time in the Office of Intelligence.  Certainly it wasn't on the basis of my lack of experience with [FISA] litigation... its res ipsa loquitur.  How does this happen in the absence of discrimination based on race?  It doesn't," and "...one could quibble over what experience is best...that's a judgment call...but now knowing the facts...,that Mr. Ridge did not even submit a complete application, I think that left me as the most qualified person with a completed application..." **Exhibit K, pages 11 and 23**.

39.     Therefore, the question before this Court is not whether a reasonable jury could find that Plaintiff has established a qualifications gap between himself and Mr. Ridge sufficient to prove discrimination in the promotion decision, but rather, whether the a reasonable jury could find on the facts presented, that Plaintiff's qualifications are such that the record does not conclusively demonstrate some legitimate non-discriminatory reason for the Defendant's promotion decision.  For the reasons discussed below, Plaintiff submits that the record fails to demonstrate a legitimate non-discriminatory reason for the Defendant's promotion decision.

I.     **Management/Supervisory Experience**

40.     "We do not say that [the employer-witness'] emphasis on management experience to the exclusion of other job criteria listed in the posted job description was alone probative of pretext.  It is the fact that [the employer's] proffered explanation for promoting [the selectee] over [the plaintiff] exhibited inconsistencies is probative." "...we also recognize the reality that an employer asked to justify its actions after the fact has an incentive to claim that the "real" criteria were those on which the chosen employee happens to perform best relative to the plaintiff.  When an employer picks one of a list of posted job qualifications and claims that it was actually decisive without regard to the others, the jury is certainly permitted to conclude, in light of the totality of the evidence, that

this may have been done as a post hoc justification of a decision made on other grounds." <u>Dennis v. Columbia Colleton Medical Center, Inc.</u>, 290 F.3d 639, 646 (4th Cir. 2002).

41.     The <u>Dennis</u> court tells us two things: (a) All of Ms. Newcomb's and Ms. Gauhar's asserted non-discriminatory justifications for Mr. Ridge's selection must be examined in the context of the false assertions made by Ms. Newcomb, Ms. Gauhar, and Ms. Klitenic, and in the context of the inconsistencies exhibited in their varied explanations of the selection process; and (b) that both before and after the false assertion was exposed, Ms. Newcomb and Ms. Gauhar had an incentive to state that they valued Mr. Ridge's specific experience over that of the Plaintiff.  Plaintiff will address below why those stated valuations are pretextual.

42.     Ms. Newcomb and Ms. Gauhar indicated that the ideal candidate would possess management/supervisory experience and that this was a significant factor in Mr. Ridge's selection. Not only is there no mention of the requirement or the desire or the preference for applicants to have management/supervisory experience in the announcement for the position, in the instant case, management/supervisory experience didn't become "essential" until after the Defendant's promotion decision was challenged by the Plaintiff.   Then, for the first time was it so described "...management/leadership experience suggesting the ability to participate effectively in high-level meetings was essential...".  **Exhibit O, page 3, paragraph 1**.

43.     In <u>Stewart v. Ashcroft</u>, 352 F.3d 422 (D.C. Cir. 2003), an African-American attorney appealed the District Court's decision granting summary judgment to the Department of Justice in a denial of promotion case.  Stewart had complained of race-based discrimination when a non-minority attorney with less litigation experience, but more managerial experience, was selected to head the Environmental Crimes Section (ECS). <u>Stewart</u>, 352 F.3d at 423- 424.  In affirming the District Court's decision, the Court noted "The Government takes the position that while litigation

experienced is required, management experience is the most critical. Specifically, DOJ required the Chief to have: experience in managing complex organizations, creating training programs, establishing and prioritizing enforcement initiatives, and developing ECS policy. It is clear [the selectee] had these skills and Stewart lacked them." Stewart, 352 F.3d at 430.

44.     In the instant case, as noted above and contrary to Stewart, if prior management/supervisory experience was "essential," the public announcement would have so indicated or specified that such experience was required, desired or preferred as in Stewart. Failing to describe an "essential" skill in a recruitment effort makes no sense because frankly, it makes no sense to encourage a wide range of unqualified applicants to apply.

45.     If one were to juxtapose the Defendant's assertion regarding the application standard which was abandoned for all applicants with the Defendant's characterization of the essential nature of management/supervisory experience for the successful applicant, one would be forced to conclude that the Defendant's actions relative to the vacancy announcement were irrational. The Defendant's vacancy announcement required the submission of items which were unnecessary for the application to be considered complete, but was silent regarding an essential skill that the Defendant sought in the successful applicant.

46.     In addition, Ms. Newcomb and Ms. Gauhar never mention the size of the Litigation Section in relation to the management challenges presented. There's a reason for their silence.

47.     At the time of Mr. Ridge's selection, the Litigation Section had only 4 full-time and 2 part-time attorneys. Suggesting that prior management experience is required in assigning matters to and editing the work product of 6 people, with the assistance of a second supervisor (the Chief), would be a stretch, and would seriously undermine the Defendant's argument regarding the essential need for such experience.

48.     Plaintiff's position is further supported by Ms. Newcomb's statement to EEO. There Ms. Newcomb indicated that **"management/leadership experience suggesting the ability to participate effectively in high-level meetings was essential..."** Ms. Newcomb's statement is a tacit admission that the management of the Litigation Section poses no significant challenge requiring prior management experience.    The Defendant's position regarding management/supervisory experience is illustrative of the post hoc justification that the <u>Dennis</u> court described.

## II.     <u>FISA Litigation Experience</u>

49.     Ms. Newcomb and Ms. Gauhar, although aware of Plaintiff's FISA Litigation experience prior to joining the Litigation Section in December 2009, fail to mention the full length Plaintiff's FISA Litigation experience in the letter to EEO,  **Exhibit O, page 4, paragraph 1**,  and are silent on the subject in their affidavits.   However, Plaintiff's work on complex FISA Litigation is evident in the record -**"Also during this rating period, [Plaintiff] has continued to work on a complex litigation matter, which has required him to take several trips out of the office,"** and in the August 14, 2009, e-mail between Plaintiff and Lisa Farabee: "Plaintiff: Thank you for the very positive performance evaluation" Farabee: "**...Nancy [Newcomb] sang your praises as well on your lit assignment."Exhibit M** ; **Exhibit L**.   "This raises a factual issue about whether [Ms. Newcomb and Ms. Gauhar], who relied on [Plaintiff's] lack of qualifications to justify their decision not to promote [him], did not accurately characterize [Plaintiff's] past work experience.   It could also undermine the credibility of their neutral justification for not promoting [Plaintiff] and could raise the specter that it was pretextual." <u>Boone v. Clinton</u>, 675 F.Supp.2d at 147.

50.     In contrast to the Defendant's position on management experience, Ms. Newcomb and Ms. Gauhar dismissed the need for Plaintiff's strength, substantive FISA Litigation experience, in managing the Section.  According to Ms. Newcomb and Ms. Gauhar, Ms. Newcomb was willing to

consider candidates "...who would require training and education about the FISA-specific aspects of the Litigation Section's work. **Exhibit O, page 3, paragraph 1; Exhibit D, Answer 15**.

51.     In <u>Downing v. Tapella</u>, 729 F.Supp.2d 88, 96 (D..D.C. 2010), the Court considered post-selection evidence to demonstrate that the employer's asserted non-discriminatory explanation had been valid. In the instant case, it is not clear that Ms. Newcomb provided any training or education about the FISA-specific aspects of the Litigation's Section's work to Mr. Ridge, as evidenced by Mr. Ridge's approval, in Ms. Newcomb's absence, of the Government's opposition papers in the case of <u>United States v. Robert J. Cabelly</u>, 09-278 (JDB).

52.     In FISA Litigation, OI attorneys draft the documents which are filed in United States District Court, but the OI attorneys do not sign them. There is no "Of Counsel" or "On the Brief" designation which identifies the attorney in OI who actually prepared the documents. Assistant U.S. Attorneys sign the OI-drafted opposition motions trusting in OI's expertise. In <u>Cabelly</u>, that trust was misplaced.

53.     The Court's decision, written by Judge Bates, begins at the second paragraph by noting "At the outset, it is important to confirm what defendant's motion does <u>not</u> seek." (Emphasis in the original). The Court then proceeds to list 5 superfluous items addressed in the Assistant U.S. Attorney's opposition which were not part of the defendant's request, and that were "largely beside the point..." They are (1) the constitutionality of FISA's probable cause standard; (2) the constitutionality of FISA's ex parte review procedure; (3) the suppression of any evidence; (4) the need for a hearing under <u>Franks v. Delaware</u>...on the ground that the FISA applications are based on false information; and (5) " the motion does seek material that would compromise the national security, such as methods, means, and facilities which the government intercepted." The certified copy of the <u>Cabelly</u> decision attached hereto as **Exhibit S**, was filed after an Assistant U.S. Attorney

in the District of Columbia's U.S. Attorney's Office signed the Ridge-approved motion opposition, trusting the experts to get it right.  Plaintiff submits that Ms. Newcomb's statement on training regarding the FISA-specific aspects of the Litigation Section was solely for the purpose of neutralizing what she believed was the Plaintiff's competitive advantage over Mr. Ridge.

54.    In Lathram v. Snow, 336 F.3d 1085 (D.C. Cir. 2003), Lathram alleged employment discrimination against U.S. Customs when Customs hired a male (Boyd) directly into a GS-15 position from outside of the Government and into a position with a higher salary than Lathram's. Lathram, 336 F.3d at 1086.  In finding for Lathram, the Circuit Court citing the District Court record indicated that "the undisputed record shows that when he was hired, Boyd had no experience in public affairs or public relations, Lathram, 336 F.3d at 1091...and "at the time Customs hired Boyd, Lathram had already been working as a Public Affairs Specialist for three years." Lathram, 336 F.3d at 1092. **"If a factfinder can conclude that a reasonable employer would have found plaintiff to be significantly better qualified for the job, but the employer did not, the fact finder can legitimately infer that the employer consciously selected a less-qualified candidate - something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture."** Lathram, 336 F.3d at 1091 (Emphasis added).  In the instant case, Ms. Newcomb and Ms. Gauhar chose Mr. Ridge to supervise that which he has never done, over Plaintiff with three years FISA Litigation experience, which Plaintiff submits is something that employers usually do not do.

55.    The management/supervisory experience justification and the minimization of the significance of FISA Litigation experience by the Defendant is clearly pretextual, and the strong consideration which caused their decision to promote Mr. Ridge, with no FISA Litigation experience,

and deny promotion to the Plaintiff, with 3 years FISA Litigation experience, was none other than race-based discrimination.

## III.   **High Level Meetings**

56.     When Plaintiff was an Assistant U.S. Attorney, witness examination before the grand jury was a skill previously mastered while Plaintiff was an Assistant District Attorney in the New York County District Attorney's Office.  In the federal grand jury, hearsay is admissible, while in the New York State grand jury, hearsay is not admissible.  The different forums required one to become familiar with a new rule, but the skill of witness examination was the same.

57.     The Defendant identifies no unique skill inherent in the high-level meeting experience that Plaintiff has not acquired in his meetings with Attorney General Ashcroft, FBI Director Mueller, different U.S. Attorneys, the Assistant Attorney General of the Criminal Division, former Deputy Assistant Attorney General Keeney, another Criminal Division Deputy Assistant Attorney General, Plaintiff's countless appearances before the Second Circuit Court of Appeals, and meetings attended while in OI dealing with national security matters.  An attorney's job is to master the subject matter of discussion regardless of the level of professional success experienced by the other attendees.

58.     Plaintiff briefed Attorney General Ashcroft on the murder of an Assistant U.S. Attorney prior to General Ashcroft's network television appearance to discuss the case.  Plaintiff briefed FBI Director Mueller on an arms-smuggling case, with witnesses and evidence from Asia and Europe, involving over 100,000 military weapons parts smuggled into the U.S. from Vietnam, and "deposed" the Director for a related Giglio filing.  Plaintiff briefed the Criminal Division AAG, the U.S. Attorney, and Deputy AAG Keeney on the murder investigation.  Plaintiff briefed Deputy AAG Keeney and another Deputy AAG on the arms smuggling investigation, and briefed a U.S. Attorney concerning a complex FISA Litigation matter.  In addition, the numerous appearances before a "hot

bench" in the Second Circuit has prepared Plaintiff well to attend any meeting and express himself clearly and succinctly in the course of zealously advocating his position. **Exhibit K, pages 11-12**.

59.     However, Plaintiff's extensive experience in this regard was for naught because Ms. Newcomb did not inquire as to the extent of Plaintiff's "high-level meeting" experience in Plaintiff's informal discussion or in the formal interview relating to the Deputy Chief position, despite the Defendant's claim of its importance to the promotion decision. **Exhibit K, page16**. Ms. Newcomb neither expressed any concern about Plaintiff's conduct in meetings he attended at her direction while in OI or meetings attended before Plaintiff joined the Litigation Section, nor questioned Plaintiff regarding any concerns Ms. Newcomb might have about Plaintiff representing OI or the Litigation Section in meetings with other government agency personnel.

60.     In fact, in the Plaintiff's performance evaluation for the rating period ending in June 2010, before the Defendant was contacted by EEO, Ms. Newcomb wrote the following: "Mr Nesbitt has prepared paperwork for filings relating to FISA litigation matters in several federal district courts throughout the country.  This work required interacting and coordinating with others within the National Security Division and the U.S. Intelligence Community...Mr. Nesbitt responds timely and efficiently to the litigation needs of components of the Department of Justice, as well as to our partners in the U.S. Intelligence Community.  His interactions with others inside and outside the Department of Justice are courteous and professional." **Exhibit Y**.  The Defendant's position regarding "high-level meetings," and any stated concerns regarding Plaintiff's interactions with members in the U.S. Intelligence Community, are additional examples of the post hoc justifications which the Dennis court described.

## IV.     Leadership Skills and Experience

61.     Ms. Newcomb commented on these issues in her affidavit.  Plaintiff will comment briefly on Ms. Newcomb's responses.

### (A) Sensitive Collection Technique Disclosed on the Internet:

62.     Several months prior to the vacancy announcement, in January 2010, Ms. Newcomb had been informed that information regarding a sensitive collection technique had been exposed through a filing in the United States District Court.  Such a disclosure could cause exceptionally grave damage to the national security of the United States by adversely affecting both terrorism and espionage investigations.  Because Plaintiff had worked on the FISA Litigation in the case, Ms. Newcomb alerted Plaintiff to the situation.  Plaintiff further investigated and informed Ms. Newcomb that the information was not only filed in Court, but was also accessible on the Internet.  Having been so informed, Ms. Newcomb decided to leave the office for the day and told the Plaintiff that she had determined that OI couldn't be blamed for the error.  However, rather than worrying about fault or blame, the most important concern in Plaintiff's judgment, was how to mask the disclosure and what to do if masking was not possible.  Whether the problem could be masked was unknown when Ms. Newcomb decided to leave.  Plaintiff, in a display of "quiet" leadership, stayed and "quietly" and effectively found the solution, and informed Ms. Newcomb and the attorney from the Counter-Espionage Section.  **Exhibit K, pages 16-17;  Exhibit T**.  Ms. Newcomb stated in her affidavit that "I do not recall anything coming of this."  **Exhibit B, Answer 47**.  Well, that's precisely the point, and the perfect "quiet" result.

**(B)** **Litigation Section Review Of Publicly Filed Documents Containing FISA Information**:

63.     Based on the incident above and another incident which potentially revealed sensitive collections in a publicly filed document, Plaintiff and a colleague drafted a proposal for Ms. Newcomb's and Ms. Gauhar's consideration.  The proposal was for OI to review documents containing FISA-derived information before public filing.  The proposal was based on the common experience of Plaintiff's colleague, who worked in the Tax Division where prior approval is needed to indict charges under Title 26, and Plaintiff's experience in Organized Crime, where prior approval is needed for RICO prosecutions.  **Exhibit U.**

64.     In her affidavit, Ms Newcomb clearly misstates the language of the proposal as one "to review all search warrants and indictments relating to national security throughout the country before prosecutors can proceed with their cases. **Exhibit B, Answer 47**.  Ms. Newcomb attempts to negate the fact that the proposal demonstrates the Plaintiff's ability to lead and work collaboratively with others while bringing insight to an important aspect of FISA Litigation.

**(C)** **Training For Litigation Section Attorneys**

65.     On June 2, 2010, immediately after Mr. Ridge's selection, Ms. Newcomb implemented Plaintiff's proposal to address the "knowledge deficit" by scheduling a mandatory training session for Litigation Section attorneys. **Exhibit K, page 7; Exhibit V**.  The presentation was to be delivered by an attorney from the Counter-Espionage Section.  Ms. Newcomb concedes following Plaintiff's proposal regarding CIPA training. **Exhibit B, Answer 47**.  It should be noted that Plaintiff communicated "quietly" and clearly enough for Ms. Newcomb to adopt Plaintiff's proposal.

(D)     **The FBI 997 Process**

66.     A 997 is a form produced by the FBI to which attorneys from OI have limited access. When performing some of their duties, the OI attorney usually engages in multiple e-mails with FBI attorneys trying to elicit sufficient factual information to pass on to the OI supervisors. The back and forth between OI and FBI attorneys can on occasion cause some tension. Plaintiff's suggestion was to make arrangements with the FBI to allow OI attorneys greater access to the 997. **Exhibit W**. Ms. Newcomb says that she doesn't recall any suggestion by Plaintiff regarding the 997 process. **Exhibit B, Answer 47**. However, the record demonstrates that Ms. Newcomb was made aware of Plaintiff's proposal on June 22, 2010, in an e-mail to Mr. Ridge and Ms. Newcomb indicating "BTW, I just want to point out that this concept had its genesis with [Plaintiff], so he really deserves any credit." **Exhibit W**.

67.     Plaintiff's 997 suggestion came after Mr. Ridge's selection, but is included here for two reasons (a) because Ms. Newcomb assigned Mr. Ridge to negotiate with the FBI on the 997, and it is with the knowledge of the quality of Plaintiff's work in FISA Litigation matters which caused Ms. Newcomb to "sing Plaintiff praises" and the above examples of leadership in FISA Litigation matters, that Ms. Newcomb told EEO that "Based on [her] experience as [Plaintiff's] supervisor, **and his responses in the interview,** she was not convinced that [Plaintiff] would be an effective supervisor of Section attorneys or a representative of the Section, or, depending on the context, the Office of Intelligence, the National Security Division, or the Department." **Exhibit O, page 4, paragraph 1**, and (b) because despite these examples of Plaintiff's work and leadership qualities, with the possibility of a sensitive disclosure neutralized, and Ms. Newcomb's adoption of two of Plaintiff's suggestions, nevertheless, after Plaintiff contacted EEO, Ms. Newcomb and Mr. Ridge saw fit to downgrade Plaintiff's performance evaluation.

68.   Ms. Newcomb's stated conclusions regarding Plaintiff's potential effectiveness appear on their face to be contrary to her experience with Plaintiff. See **Exhibit Y**. "Although employers may of course take subjective considerations into account in their employment decisions, courts traditionally treat explanations that rely heavily on subjective considerations with caution. Particularly...where a jury could reasonably find that the plaintiff was otherwise significantly better qualified than the successful applicant, an employer's asserted strong reliance on subjective feelings about the candidates may mask discrimination. Aka v. Washington Hospital Center, 156 F.3d at 1298.

69.   Ms Newcomb's conclusions **must** be weighed in light of the false assertions made by her and other officials to the EEO in their attempts to justify Mr. Ridge's selection; in light of their silence regarding the motivation for abandoning the selection process, and in light of their failure to mention the full extent of Plaintiff's FISA Litigation experience and Mr. Ridge's complete lack of such experience. "Evidence indicating that an employer misjudged an employee's performance or qualifications is, of course, relevant to the question whether its stated reason is a pretext masking prohibited discrimination...**if the employer made an error too obvious to be unintentional, perhaps it had an unlawful motive for doing so.**" Fischbach v. District of Columbia Department of Corrections, 86 F.3d 1180, 1183 (D.C. Cir 1996) (Emphasis added).

70.   In Kalinoski v. Gutierrez, 435 F. Supp.2d 55, 68 (D.D.C. 2006), where plaintiff's supervisor mentioned in a declaration that plaintiff was transferred because of her job performance, but stated in a deposition that plaintiff was transferred for reasons other than her job performance, the Court noted that "this evidence of alternate justifications tends to undercut the proffered explanation." As noted above, Ms. Newcomb told the EEO that her decision was based in part on Plaintiff's responses in the interview. **Exhibit O, page 4, paragraph 1**. However, when Ms. Newcomb discussed Plaintiff's interview responses in her affidavit, under penalty of perjury, she

responded as follows: **Question 42: To what extent, if any, did the applicants' comparative performance during their interviews impact on your selection?  Answer: None.  Exhibit B**.

71.     The Court of Appeals in <u>Aka</u> notes that "When the Plaintiff rebuts the employer's own explanation of its challenged acts, this eliminates the principal nondiscriminatory explanation for the employer's actions.  Events have causes; if the only explanations set forth in the record have been rebutted, the jury is permitted to search for others, and may in appropriate circumstances draw an inference of discrimination."  <u>Aka v.Washington Hospital Center</u>, 156 F.3d at 1292.

72.     Therefore, in accordance with the facts and the law as stated above, Plaintiff submits that summary judgment is precluded because the facts asserted by Plaintiff in rebuttal to Defendant's justifications establish that the record fails to conclusively demonstrate a legitimate non-discriminatory reason for the Defendant's promotion decision, and that Plaintiff's rebuttal is sufficiently strong such that a reasonable jury could conclude that the Defendant's justifications are pretextual and solely designed to mask a promotion decision which was the product of race-based discrimination.

## V.                    <u>CONCLUSION</u>

73.     "Because the typical Title VII discrimination or retaliation case is premised on the employers's subjective motivations, the critical issue concerns what was taking place in the subject individuals' minds.  Thus, if the individuals who allegedly took discriminatory/retaliatory acts deny that discrimination or retaliation motivated their actions, because no one else knows precisely what went on inside their minds, it is difficult (if not impossible) for there not to be a question of fact as to what actually motivated them. <u>Thomas v. Washington Metropolitan Area Transit Authority</u>, 2012 WL 6055577 at *3 (D.D.C. 2012).

74.      Common human experience tells us that people often try to hide the truth.  Mass media has shown that people try to hide the truth about many different things.  The false assertions made by the Defendant to EEO about the application standards raises the question of what truth the Defendant is hiding, and whether that truth is race-based discrimination in the selection of the Deputy Chief of Litigation.  This case presents issues of material fact about which there is a genuine dispute, which would permit a reasonable jury to find that Plaintiff is the victim of race-based discrimination in the promotion denial.

75.      In addition to the Defendant's false assertions being disproved, none of the Defendant's list of supposedly nondiscriminatory justifications for its promotion decision withstand close scrutiny and cannot be deemed established and undisputed as a matter of law.

For all the reasons set forth above, the Defendant's Motion For Summary Judgment should be denied.

Respectfully submitted,

Joshua W. Nesbitt
1629 Tucker Road
Fort Washington, Maryland 20744
301-573-3278

Date: May 29, 2013

IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JOSHUA NESBITT<br>1629 Tucker Road<br>Fort Washington, Maryland 20744<br>301-573-3278<br><br>     Plaintiff,<br>v.<br><br>ERIC H. HOLDER, JR.,<br>Attorney General, United States<br>Department of Justice<br><br>     Defendant | AFFIDAVIT OF SERVICE<br><br>Civil Action No. 12-717 (RWR) |

City of Washington,
District of Columbia:

SHARIF ABDUR-RAHIM, being duly sworn, deposes and says that:

1.    The deponent is not a party to the action, is 21 years of age or older and resides at 9713 Oxbridge Way, Bowie, Maryland 20721

2.    On the 30th day of May, 2013, the deponent served the following described documents upon the person or persons listed in paragraph 4: Plaintiff's Opposition To Defendant's Motion For Summary Judgment, Plaintiff's Statement of Material Facts As To Which There Is No Genuine Dispute, Plaintiff's Memorandum Of Points And Authorities In Opposition Of Defendant's Motion For Summary Judgement, and Plaintiff's Exhibits A through BB.

3.    The number of copies served on each said person was One.

4.    The method of Service on each said person was: By delivering the above-listed documents to Assistant United States Attorney Mercedeh Momeni's office in an

envelope addressed as follows: To  Assistant United States Attorney Mercedeh Momeni, United States Attorney's Office for the District of Columbia, Civil Division, ~~555 4th~~ 501 3rd Street, NW, Washington, D.C. 20530.

(SKP)

Dated: Washington, D.C.
May 30, 2013

SHARIF ABDUR-RAHIM

Sworn to before me this __30__
day of May, 2013

Notary Public

