UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSHUA NESBITT ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ERIC H. HOLDER, JR., ) <br> ATTORNEY GENERAL, ) <br> U.S. DEPARTMENT OF JUSTICE ) <br> ) <br> Defendant. ) <br> ) | Civil No. 12-717 (RCL) |

## MEMORANDUM OPINION

Joshua Nesbitt filed suit against his employer, the United States Department of Justice, alleging one count of race discrimination in violation of Title VII of the Civil Rights Act of 1964. Upon consideration of the government's Motion for Summary Judgment [20], Mr. Nesbitt's Opposition [21] & [24] thereto, and the government's Reply [25], the Court hereby DENIES the government's motion for summary judgment.

### I. BACKGROUND

Plaintiff Joshua Nesbitt, an African-American man, has served as an attorney for various components of the Department of Justice ("the Department") for more than twenty years. Pl.'s Statement of Undisputed Material Facts ¶ 1, ECF No. 21 [hereinafter Pl.'s SMF]. In the spring of 2010, Mr. Nesbit was an attorney in the Litigation Section of the Office of Intelligence ("the Office"), a branch of the Department's National Security Division. *Id.* ¶ 2, 3. On April 22, 2010, Nancy Newcomb, Chief of the Litigation Section and a white woman, sent an office-wide

e-mail inviting applications for a newly-created Deputy Chief position. *Id.* ¶ 2, 8. The vacancy was publicly advertised on April 26, 2010. *Id.* ¶ 9. The position description, qualifications, and application requirements stated in the vacancy announcement were developed by Ms. Newcomb, in consultation with the Office's Chief of Human Resources, Joyce Klitenic, also a white woman. *See* Pl.'s Opp'n to Def.'s Mot. Summ. J., Ex. E (EEO Interrog. of Joyce Klitenic, Feb. 10, 2011), at 2–3 [hereinafter Klitenic Interrog.].

According to the vacancy announcement, the Deputy Chief would be responsible for "assisting the Section Chief in coordinating and overseeing criminal and civil litigation related to [the Foreign Intelligence Surveillance Act ("FISA")]." Pl.'s Opp'n, Ex. G (Vacancy Announcement, Apr. 26, 2010), at 1 [hereinafter Vacancy Ann.]. Ms. Newcomb desired a candidate "who could assist . . . in managing the increasing work load in the Litigation Section and fulfill the Chief's duties" in her absence. Pl.'s Opp'n, Ex. B (EEO Interrog. Of Nancy Newcomb, Feb. 11, 2011), at 6 [hereinafter Newcomb Interrog.]. The Deputy Chief would serve as both a first-line supervisor of the six attorneys in the Litigation Section and as a representative of the Office at "high-level meetings relating to national security matters with . . . members of the Intelligence Community." *Id.* at 7. Relative to the sophisticated responsibilities of the position, the required qualifications were general and sparse—applicants needed only membership in any state bar and three years of post-law school legal experience. Vacancy Ann. 1. All applicants, whether internal or external, were directed to submit a cover letter, résumé, writing sample, law school transcript, and current performance appraisal to Ms. Klitenic's office. *Id.* at 2.

Mr. Nesbitt immediately expressed his interest in the position. Within hours of the release of the public announcement on April 26, Mr. Nesbitt e-mailed Ms. Klitenic to inquire

whether he needed to submit a law school transcript and writing sample given his status as an internal candidate.[1]  Pl.'s Opp'n, Ex. H (E-mail between Joshua Nesbitt and Joyce Klitenic, Apr. 26, 2010) [hereinafter Klitenic E-mail].  Ms. Klitenic responded that Mr. Nesbitt should submit "everything that is requested in the vacancy announcement." *Id*.  Mr. Nesbitt then contacted a human resources employee to request a copy of his transcript from his personnel file.  Pl.'s Opp'n, Ex. I (E-mail from Joshua Nesbitt to Tammy Green, Human Resources Employee, National Security Division, Apr. 26, 2010).  He received no response.  Pl.'s SMF ¶ 13, 14.  Separately, Mr. Nesbitt informed Ms. Newcomb that although he planned to apply, he could not complete his application until he received a copy of his transcript.  *Id*. ¶ 18.

On April 27—while Mr. Nesbit was awaiting a copy of his transcript to complete his application—a white attorney in the Office, Paul Ridge, submitted only his résumé via e-mail to Ms. Newcomb and Ms. Klitenic.  Pl.'s Opp'n, Ex. J (E-mail from Paul Ridge to Nancy Newcomb & Joyce Klitenic, Apr. 27, 2010) [hereinafter Ridge E-mail].  Mr. Ridge's e-mail stated that his transcript "should be on file somewhere within the Department" and that he did not have a writing sample because he did not "get paid to write." *Id*.  Despite the lack of a transcript, writing sample, or performance appraisal, Mr. Ridge's e-mail was treated as a complete application.

On May 14, after obtaining a copy of his transcript from his law school, Mr. Nesbitt delivered a hard copy of his application to Ms. Klitenic's office.  Pl.'s SMF ¶ 18, 19.  In accordance with the announcement requirements, Mr. Nesbitt's application included a cover letter, résumé, law school transcript, writing sample, and performance appraisal.  Pl.'s Opp'n, Ex. L (Application of Joshua Nesbitt, May 14, 2010) [hereinafter Nesbitt Application].

---

[1] Having met Mr. Nesbitt at the outset of his tenure with the Office, Klitenic Interrog. 2, Ms. Klitenic was presumably already aware of Mr. Nesbitt's internal status.

3

Ms. Klitenic received 34 applications for the Deputy Chief position, all of which were forwarded to Ms. Newcomb for review. Pl.'s Opp'n, Ex. O (Memorandum from Janice Kaye, National Security Division to Leisa Bush-Yillah, EEO Specialist, Sept. 2, 2010), at 3 [hereinafter EEO Resp. Mem.]. Ms. Newcomb selected three internal candidates for interviews: Mr. Nesbitt, Mr. Ridge, and a white female attorney.[2] *Id*. On May 28, 2010, after interviewing all three candidates, Ms. Newcomb selected Mr. Ridge as the new Deputy Chief. Pl.'s Opp'n, Ex. N (E-mail from Nancy Newcomb to Employees of the Office of Intelligence, May 28, 2010).

Mr. Nesbitt filed a timely complaint with the Department's Equal Employment Opportunity Office ("EEO"), and after exhausting his remedies with the EEO, Mr. Nesbit filed suit in this Court, alleging one count of race discrimination in violation of Title VII of the Civil Rights Act of 1964. Compl. ¶ 33. Specifically, Mr. Nesbitt alleges that the Department "intentionally discriminated against Plaintiff in violation of Title VII by not selecting him for the Deputy Chief position on the basis of his race and color." *Id*. Following discovery and a failed mediation attempt, the government moved for summary judgment.

## II. LEGAL STANDARD

### A. Summary Judgment

"[T]he central purpose of the summary judgment device . . . is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986). A fact is material if it could affect the outcome of the case. *Anderson*, 477 U.S. at

---

[2] Of the three internal candidates, the white female applicant had the least legal experience and the shortest tenure with the Department. EEO Resp. Mem. 3. She submitted a complete application. Pl.'s Opp'n, Ex. X (Application of Unnamed Female Applicant, May 13, 2010) [hereinafter Unnamed Application].

248. A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," on a motion for summary judgment. *Id*. The sole issue presented by a motion for summary judgment is whether there is a genuine issue for trial.

**B. Title VII**

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire . . . or otherwise to discriminate against any individual . . . because of such individual's . . . race" 42 U.S.C. § 2000e-2(a)(1). Section 2000e-16(a) makes Title VII applicable to federal agencies, and although the language of that provision differs slightly from §§ 2000e-2(a) and e-3(a), the D.C. Circuit has held that Title VII "places the same restrictions on federal . . . agencies as it does on private employers" and that courts may "construe the latter provision in terms of the former." *Singletary v. Dist. of Columbia*, 351 F.3d 519, 524 (D.C. Cir. 2003); *see also Taylor v. Solis*, 571 F.3d 1313, 1320 (D.C. Cir. 2009).

With respect to discrete discrimination claims, plaintiffs must plead two elements: "(i) the plaintiff suffered an adverse employment action (ii) because of the [his] . . . race . . . ." *Brady v. Office of Sergeant of Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008). Although discrimination based on circumstantial evidence has traditionally been analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973),[3] the

---

[3] The *McDonnell Douglas* framework requires that the plaintiff first establish a prima facie case of discrimination by a preponderance of the evidence; second, the employer must present a legitimate, nondiscriminatory reason for its actions; and third, the plaintiff must establish that the employer's nondiscriminatory reason is a pretext to mask

5

D.C. Circuit in *Brady* simplified the approach district courts should take in analyzing these claims. In *Brady*, the Circuit explained:

> [W]here an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not—and should not—decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas. Rather, in considering an employer's motion for summary judgment . . . the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?

520 F.3d at 494. At all times, the burden of persuasion remains with the plaintiff; only the production burden shifts. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000).

## III. ANALYSIS

It is undisputed that Mr. Nesbitt suffered an adverse employment action—namely, rejection for the Deputy Chief position. The Department of Justice asserts that this rejection occurred, not on account of Mr. Nesbitt's race, but because Mr. Ridge was the best and most qualified candidate. All that remains, then, is the "central question" whether Mr. Nesbitt has produced sufficient evidence for a reasonable jury to conclude that this qualifications-based explanation is mere pretext for intentional discrimination. *Brady*, 520 F.3d at 494. "Viewing the evidence as favorably to [Mr. Nesbitt] as reason will permit," *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1295 (D.C. Cir. 1998), this Court concludes that the plaintiff has met his burden.

Even assuming, as the government asserts, that Mr. Ridge was supremely qualified to supervise the Litigation Section, that is not dispositive of this case. Although in some cases, a plaintiff *may* prove pretext by establishing that a reasonable employer would have found him

---

unlawful discrimination. 411 U.S. at 802–04; *see also Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).

"*significantly* better qualified for the job," a plaintiff is not required "to establish this disparity in order to survive a motion for summary judgment." *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006). Indeed, the Circuit has "emphasized that a plaintiff attacking a qualifications-based explanation is expressly *not* limited to comparing her qualifications against those of a successful applicant," and may defeat summary judgment by "expos[ing] other flaws in the employer's explanation." *Id*. Here, Mr. Nesbitt has identified at least three such flaws.

*First*, Mr. Nesbitt alleges that the Office inconsistently applied the application requirements of a writing sample and transcript. Such a "failure to follow established procedures or criteria" is sufficient to support a reasonable inference of intentional discrimination. *Brady*, 520 F.3d at 495 n.3. The vacancy announcement developed by Ms. Newcomb and Ms. Klitenic required delivery of an application package, including a writing sample, transcript, and performance review, to Ms. Klitenic. *See* Vacancy Ann. 2. Being familiar with Mr. Nesbitt's tenure with the Office, and having been explicitly reminded that Mr. Nesbitt was an internal candidate, Ms. Klitenic confirmed that Mr. Nesbitt was required to submit a writing sample and transcript. *See* Klitenic E-mail. Also knowing that Mr. Nesbitt was an internal candidate, Ms. Newcomb gave no response at all after being informed that Mr. Nesbitt was delaying his application in order to obtain a transcript. Pl.'s SMF ¶ 18. But these same officials accepted only an e-mailed résumé from Mr. Ridge as a complete application. *See* Ridge E-mail. The government has offered no explanation for the strict adherence to the application requirements for Mr. Nesbitt, while abandoning those same requirements for Mr. Ridge. This contravention of the publicized application requirements to the benefit of a white applicant permits a reasonable inference that the qualifications-based rationale is pretext.

7

*Second*, Mr. Nesbitt points to the inconsistent justifications offered for the selective enforcement of the application requirements. Certainly, "shifting and inconsistent justifications are probative of pretext." *Geleta v. Gray*, 645 F.3d 408, 413 (D.C. Cir. 2011). Ms. Newcomb and Ms. Klitenic developed the vacancy announcements that set forth identical requirements for internal and external applicants. *See* Vacancy Ann. 2; Newcomb Interrog. 3–4; Klitenic Interrog. 3. Ms. Klitenic instructed Mr. Nesbitt, despite his internal status, to comply with all of the requirements. *See* Klitenic E-mail. But in the written response to Mr. Nesbitt's EEO complaint, composed based upon information provided by Ms. Klitenic and Ms. Newcomb, the Department asserted that "[a]lthough the posting did not differentiate between internal and external candidates, internal candidates did not have to submit a law school transcript, current performance review or writing sample[.]" EEO Resp. Mem. 3. The existence of this unwritten and previously undisclosed policy is unconvincing given the government's inability to explain how it came to be. When interviewed by EEO investigators, Ms. Newcomb responded "I do not know" when asked who determined the application requirements for internal candidates, Newcomb Interrog. 4, while Ms. Klitenic claimed that her office had determined the policy in consultation with Ms. Newcomb, Klitenic Interrog. 3.

Additionally, throughout this litigation, the Department has argued that Mr. Nesbitt's claim is moot because Ms. Newcomb "did not consider documents submitted by the applicants beyond the résumés." Def.'s Reply in Supp. of Summ. J., ECF No. 25, at 7 [hereinafter Def.'s Reply 7]. This is at odds with Ms. Newcomb's sworn statement that she does not "recall precisely which materials [she] reviewed for each candidate." Newcomb Interrog. 5. These "changes and inconsistencies" in the Department's explanations are sufficient to "cast doubt on the [Department's] proffered reason" for the selection of Mr. Ridge. *Brady*, 520 F.3d at 495 n.3;

*see also Evans v. Sebelius*, 716 F.3d 617, 620–621 (2013) (holding that the government's "shifting reasons for the non-promotion" of a black employee and inability to determine "who precisely" cancelled the sought-after position were sufficient to support an inference of intentional discrimination).

*Finally*, Mr. Nesbitt argues that Ms. Newcomb misstated his qualifications in an effort to justify Mr. Ridge's selection. The Department has repeatedly underscored the importance of the Deputy Chief's ability to represent the Office at high-level meetings. *See, e.g.*, EEO Resp. Mem. 3 (stating that the "ability to participate effectively in high-level meetings was essential"); Newcomb Interrog. 7 ("The Deputy Chief . . . represents the Section . . . at high-level meetings relating to national security matters with . . . the FBI and members of the Intelligence Community."); Def.'s Reply 9 (same). Moreover, the Department has emphasized Mr. Ridge's experience representing the Office at such meetings as a reason for the selection of Mr. Ridge over Mr. Nesbitt. *See, e.g.*, EEO Resp. Mem. 3–4 (stating that Mr. Ridge has "represented the Office of Intelligence . . . in high-level meetings with the FBI and other agencies of the Intelligence Community [ ] and . . . the Attorney General," while Mr. Nesbitt "lacks experience dealing with Department leadership and representatives of the Intelligence Community at high-level meetings"); Newcomb Interrog. 7 (same); Def.'s Reply 9 (noting Ms. Newcomb's belief that Mr. Ridge could "vigorously represent the office in various meetings," while Mr. Nesbitt would not).

Despite the weight placed on high-level meetings in the Department's explanation of Mr. Ridge's promotion, that aspect of the Deputy Chief position is absent from the vacancy announcement, and the Department does not dispute Mr. Nesbitt's statement that he was never asked about his experience with such meetings during his interview. *See* Vacancy Ann.; Pl.'s

9

Opp'n, Ex. K (Aff. of Joshua W. Nesbitt, Jan. 25, 2011), at 15–16 [hereinafter Nesbitt Aff.]. However, in the absence of any basis for its conclusion, the Department nonetheless determined that Mr. Nesbit "lacks experience dealing with Department leadership and representatives of the Intelligence Community at high-level meetings," EEO Resp. Mem. 4, which contradicts Mr. Nesbitt's statement that he personally briefed the Attorney General in 2002 on an organized crime matter; debriefed and interviewed FBI Director Mueller; and directly participated in other meetings with Assistant Attorney Generals in the Criminal Division of the Department, Nesbitt Aff. 12. The Department's misstatement of Mr. Nesbitt's qualifications "may suffice to permit a jury to infer that the employer's explanation is incorrect or fabricated, and thus to infer discrimination." *Aka*, 156 F.3d at 1295.

Of course, it may be true, and at trial, a jury may well find, that there are innocuous reasons for all of the Department's actions and that Mr. Nesbitt simply lost out to a better candidate. Alternatively, a jury may reasonably credit Mr. Nesbitt's version of events. And given (1) the inconsistent enforcement of the application requirements; (2) the inconsistent explanations offered by the defendant; and (3) the defendant's misstatements of Mr. Nesbitt's qualifications, a jury may reasonably find that the Department's explanation is "unworthy of credence" and thus "probative of intentional discrimination." *Reeves*, 530 U.S. at 147. It is not the duty of this Court to resolve this dispute by judicial fiat at summary judgment. *See Primas v. Dist. of Columbia*, 719 F.3d 693, 698 (D.C. Cir. 2013) ("Because the record permits either inference, it is the jury's job . . . to choose between them."). Accordingly, the Court DENIES the defendant's motion for summary judgment.

A separate Order consistent with this Memorandum Opinion shall issue this date.
Signed by Royce C. Lamberth, United States District Judge, on September 5, 2013.